MERCHANTS NATIONAL BANK OF BOSTON, EXECUTOR, *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 30.   Argued October 19, 1943.—Decided November 15, 1943.

Mr. *Edward C. Thayer* for petitioner.

Mr. *Arnold Raum,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key* and *Morton K. Rothschild* and *Miss Helen R. Carloss* were on the brief, for respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

Ozro M. Field died in Massachusetts in 1936, leaving a gross estate of some $366,000. In his will he provided, after certain minor bequests, that the residue of his estate be held in trust, the income to go to his wife for life, and on her death all but $100,000 of the principal[1] to go "free and discharged of this trust" to certain named charities. Under the trust set up by the will, the trustee, petitioner here, was authorized to invade the corpus "at such time or times as my said Trustee shall in its sole discretion deem

---

[1] The $100,000 was to remain in trust, the income to go in equal shares to his three adopted children and a niece of his wife, and on the death of the last of these beneficiaries the corpus was also to go to the named charities.

wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife, May L. Field, my said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust."

In 1937 the trust realized gains of $100,900.31 from the sale of securities in its portfolio.

In filing estate and income tax returns petitioner, which was also Mr. Field's executor, sought to deduct $128,276.94 from the gross estate and the $100,900.31 from the 1937 income of the trust, on the theory that those sums constituted portions of a donation to charity and were therefore deductible respectively under § 303 (a) (3) of the Revenue Act of 1926 (44 Stat. 72)[2] and § 162 (a) of the Revenue Act of 1936 (49 Stat. 1706).[3]

---

[2] Section 303 provides:

"For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

.        .        .        .        .

"(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, . . ."

[3] Section 162 provides:

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year

The commissioner disallowed the deductions and determined deficiencies of $26,290.93 in estate tax and $42,825.69 in income tax for 1937, but on the taxpayer's petition for review the Board of Tax Appeals (now the Tax Court) upheld the latter's contentions. The Court of Appeals reversed the Board of Tax Appeals, 132 F. 2d 483, and we granted certiorari because of an asserted conflict with decisions of other circuit courts[4] and this Court.[5] 319 U. S. 734.

There is no question that the remaindermen here were charities. The case, at least under § 303 (a) (3), turns on whether the bequests to the charities have, as of the testator's death, a "presently ascertainable" value or, put another way, on whether, as of that time, the extent to which the widow would divert the corpus from the charities could be measured accurately.

Although Congress, in permitting estate tax deductions for charitable bequests, used the language of outright transfer, it apparently envisaged deductions in some circumstances where contingencies, not resolved at the testator's death, create the possibility that only a calculable portion of the bequest may reach ultimately its charitable destination.[6] The Treasury has long accommodated the

paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes. . . ."

[4] Compare the decision below with *Hartford-Connecticut Trust Co.* v. *Eaton,* 36 F. 2d 710 (C. C. A. 2d); *First National Bank* v. *Snead,* 24 F. 2d 186 (C. C. A. 5th); *Lucas* v. *Mercantile Trust Co.,* 43 F. 2d 39 (C. C. A. 8th); *Commissioner* v. *Bank of America Assn.,* 133 F. 2d 753 (C. C. A. 9th); *Commissioner* v. *F. G. Bonfils Trust,* 115 F. 2d 788 (C. C. A. 10th).

[5] See *Ithaca Trust Co.* v. *United States,* 279 U. S. 151.

[6] E. g., the not unusual case of a bequest of income for life intervening between the testator and the charity, requiring computation, with the aid of reliable actuarial techniques and data, of present value from future worth. Compare the provisions for charitable deductions in

administration of the section to the narrow leeway thus allowed to charitable donors who wish to combine some private benefaction with their charitable gifts. The limit of permissible contingencies has been blocked out in a more convenient administrative form in Treasury Regulations which provide that, where a trust is created for both charitable and private purposes the charitable bequest, to be deductible, must have, at the testator's death, a value "presently ascertainable, and hence severable from the interest in favor of the private use," [7] and further, to the extent that there is a power in a private donee or trustee to divert the property from the charity, "deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power." [8] These Regulations are appropriate implementations of § 303 (a) (3), and, having been in effect under successive reënactments of that provision, define the framework of the inquiry in cases of this sort. Cf. *Helvering* v. *Winmill*, 305 U. S. 79; *Taft* v. *Commissioner*, 304 U. S. 351.

Whatever may be said with respect to computing the present value of the bequest of the testator who dilutes his charity only to the extent of first affording specific private legatees the usufruct of his property for a fixed period, a different problem is presented by the testator who, preferring to *insure* the comfort and happiness of his private legatees, hedges his philanthropy, and permits invasion of the corpus for their benefit. At the very least a possibility that part of the principal will be used is then created, and the present value of the remainder which the charity will receive becomes less readily ascertainable. Not infrequently the standards by which the extent of permis-

the Revenue Acts of 1918—§ 403 (a) (3) (40 Stat. 1098); 1921— § 403 (a) (3) (42 Stat. 279); 1924—§ 303 (a) (3) (43 Stat. 306); 1926—§ 303 (a) (3) (44 Stat. 72).

[7] Treasury Regulations 80 (1934 ed.) Art. 44.

[8] Treasury Regulations 80 (1934 ed.) Art. 47.

sible diversion of corpus is to be measured embrace factors which cannot be accounted for accurately by reliable statistical data and techniques. Since, therefore, neither the amount which the private beneficiary will use nor the present value of the gift can be computed, deduction is not permitted. Cf. *Humes* v. *United States,* 276 U. S. 487.

For a deduction under § 303 (a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. *Humes* v. *United States,* 276 U. S. 487, 494. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Cf. *Bank of America Assn.* v. *Commissioner,* 126 F. 2d 48 (C. C. A.).

In this case the taxpayer could not sustain that burden. Decedent's will permitted invasion of the corpus of the trust for "the comfort, support, maintenance and/or happiness of my wife." It enjoined the trustee to be liberal in the matter, and to consider her "welfare, comfort and happiness prior to the claims of residuary beneficiaries," i. e., the charities.

Under this will the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life. Compare *Ithaca Trust Co.* v. *United States,* 279 U. S. 151. Here, for example, her "happiness" was among the factors to be considered by the trustee. The sums which her happiness might require to

be expended are of course affected by the fact that the trust income was not insubstantial and that she was sixty-seven years old with substantial independent means and no dependent children.[9]   And the laws of Massachusetts may restrict the exercise of the trustee's discretion somewhat more narrowly than a liberal reading of the will would suggest, although that is doubtful.   Cf. *Dana* v. *Dana,* 185 Mass. 156, 70 N. E. 49, and compare *Sparhawk* v. *Goldthwaite,* 225 Mass. 414, 114 N. E. 718.   Indeed one might well "guess, or gamble . . . , or even insure against" the principal being expended here.   Cf. *Humes* v. *United States, supra.*   But Congress has required a more reliable measure of possible expenditures and present value than is now available for computing what the charity will receive.   The salient fact is that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction.[10]   This is not

---

[9] The Board of Tax Appeals found that decedent had adopted three children—two girls and a boy—before his marriage to the present Mrs. Field.  She never adopted the children.  The two girls were married to husbands fully able to support them, and the boy was nearly twenty-one at the testator's death.

Immediately after decedent's death the widow owned income-producing property worth about $104,000.  Her total income from her own property and the trust, and the amounts she has actually expended have been as follows:

| Period | Income | Expenditures |
|---|---|---|
| 1936 (7 months) | $10,735.35 | $1,853.99 |
| 1937 | 24,738.57 | 10,357.91 |
| 1938 | 17,480.85 | 11,055.91 |
| 1939 | 17,448.23 | 12,024.92 |
| 1940 | 16,959.66 | 13,389.31 |
|  | $87,362.66 | $48,682.04 |

[10] E. g., the Board found that since her husband's death, Mrs. Field purchased two automobiles and a fur coat, took two pleasure trips, gave financial assistance to a niece, helped send a grand nephew through medical school, and purchased a fur coat for one of her husband's daughters.

a "standard fixed in fact and capable of being stated in definite terms of money." Cf. *Ithaca Trust Co.* v. *United States, supra.* Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial. We conclude that the commissioner properly disallowed the deduction for estate tax purposes.

The deduction for income tax purposes stands on no better footing. Congress permitted a deduction of that part of gross income "which pursuant to the terms of the will . . . is during the taxable year . . . permanently set aside" for charitable purposes. In view of the explicit requirement that the income be permanently set aside, there is certainly no more occasion here than in the case of the estate tax to permit deduction of sums whose ultimate charitable destination is so uncertain.

Accordingly, the decision of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE JACKSON concurs, dissenting:

The Tax Court applied the correct rule of law in determining whether the gifts to charity were so uncertain as to disallow their deduction. That rule is that the deduction may be made if on the facts presented the amount of the charitable gifts are affected by "no uncertainty appreciably greater than the general uncertainty that attends human affairs." *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 154. In that event the standard fixed by the will is "capable of being stated in definite terms of money." *Id.,* p. 154. The mere possibility of invasion of the corpus is not enough to defeat the deduction. The

Tax Court applied that test to these facts. 45 B. T. A. 270, 273–274. Where its findings are supported by substantial evidence they are conclusive. We may modify or reverse such a decision only if it is "not in accordance with law." 44 Stat. 110, 26 U. S. C. § 1141 (c) (i). See *Wilmington Trust Co.* v. *Helvering,* 316 U. S. 164, 168. The discretion to pay to the wife such principal amounts as the trustee deems proper for her "happiness" introduces of course an element of uncertainty beyond that which existed in the *Ithaca Trust Co.* case. There the trustee only had authority to withdraw from the principal and pay to the wife a sum "necessary to suitably maintain her in as much comfort as she now enjoys." But the frugality and conservatism of this New England corporate trustee, the habits and temperament of this sixty-seven year old lady, her scale of living, the nature of the investments—these facts might well make certain what on the face of the will might appear quite uncertain. We should let that factual determination of the Tax Court stand, even though we would decide differently were we the triers of fact.