BERRY v. KUHL, Collector of Internal Revenue (UNITED STATES, Intervener).

Civ. A. No. 4416.

District Court, E. D. Wisconsin.

May 3, 1948.

582

Jeffris, Mouat, Oestreich, Wood & Cunningham and Otto Oestreich, all of Janesville, Wis., for plaintiff.

Timothy Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, and M. P. Wolk, Sp. Asst. to the Atty. Gen., for Frank Kuhl and the United States.

DUFFY, District Judge.

This is an action to recover a portion of the federal estate taxes paid on the estate of Earl E. Berry, deceased. The federal estate tax return, as filed, showed a gross estate of $428,645.92. The widow claimed a deduction in the sum of $113,360.95, as the value of the remainder interest which was bequeathed to a charitable organization. The Commissioner of Internal Revenue reduced the charitable deduction to $64,510.48 by eliminating from the claimed deduction the value of a $5,000.00 annuity to decedent's widow under Paragraph Sixth of the will.

Earl E. Berry, who died November 9, 1943, is survived by his widow, Wilma. His will contained a testamentary trust which provided that the income should be paid to his widow (and thereafter to his daughter, Martha Berry Datus, who died after he made the will and prior to decedent's death), and on her death to the Beloit Foundation, Inc., a charitable organization. The will further provides: "Sixth: If by reason of accident, illness or other cause,

either Wilma E. Berry or Martha Berry Datus requires funds for this treatment, support, or maintenance, I request that the court having jurisdiction of the trust created under this will authorize my trustee to pay either of them such portion of the principal of the trust fund as the court deems advisable, not exceeding the sum of Five Thousand Dollars ($5,000.00) in any one year."

Wilma Berry, now 57 years, has an individual estate aggregating approximately $300,000.00, the income from which from 1944 to 1947 has ranged from $9,000.00 to $11,000.00 a year. The income from the testamentary trust from 1944 to 1947 has ranged from $7,000.00 to $11,000.00 a year. The cost of Mrs. Berry's accustomed standard of living is not in excess of $7,500.00 per year. She plans to live on this income.

The applicable regulations are portions of T.R. 105. Sec. 81.44 provides, in part: "If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. * * * Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay or deliver the principal to the charitable corporation, or to apply it to a charitable purpose, the present value of the remainder, is deductible. * *° *" Section 81.46 provides: "If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in

part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

To guide a determination of the issues in this case two decisions of the Supreme Court stand out like beacon lights. The first is Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, and the other is Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35. The facts in this case place it somewhere between those two decisions. The difficulty is to determine which of the decisions should control.

In the Ithaca Trust case the testator left the residue of his estate to his wife for life with authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The remainder was bequeathed in trust to certain charities. The court held that the provision for the maintenance of the wife did not make the gifts to charity so uncertain that the deduction could not be allowed. The court said 279 U.S. at page 154, 49 S.Ct. at page 291, 73 L.Ed. 647: "* * * The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. * * * There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

In the Merchants Bank case, supra, the decedent left a will bequeathing the residue to a trustee to pay the income to his wife for life and upon her death part of the remainder was to go to certain charities. The trustee was authorized to invade the corpus [320 U.S. 256, 64 S.Ct. 110] "at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife * * * my said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." The widow was a woman of 67 years, who had moderate living habits, and owned income-producing property worth $104,000.00. The income from the trust and from her own property was more than sufficient to provide for her needs. The Commissioner disallowed the executor's deduction of the charitable remainder, but the Board of Tax Appeals upheld the executor's position. The Circuit Court of Appeals reversed the Board of Tax Appeals, and the Supreme Court affirmed, thus sustaining the Commissioner's decision.

The court stated the question at issue in the following language, 320 U.S. at page 259, 64 S.Ct. at page 110: "* * * The case * * * turns on whether the bequests to charities have, as of the testator's death, a 'presently ascertainable' value or, put another way, on whether, as of that time, the extent to which the widow would divert the corpus from the charities could be measured accurately." The court further said 320 U.S. at pages 261, 262, 64 S.Ct. at page 111: "Under this will the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life. Compare Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. Here, for example, her 'happiness' was among the factors to be considered by the trustee. The sums which her happiness might require to be expended are of course affected by the fact that the trust income was not insubstantial and that she was sixty-seven years old with substantial independent means and no dependent children. * * *" And 320 U.S. on page 263, 64 S.Ct. on page 112: "* * * Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too

large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial. * * * "

In the case at bar, if the widow by reason of accident, illness or other cause requires funds for treatment, support, or maintenance, the court is requested to authorize the trustee to pay her from the principal of the trust fund such sum as the court deems advisable, not exceeding $5,000.00 in a year. The first condition is broad—by reason of accident, illness or other cause. But it is also a condition that she must make application to the court, and there make a showing that she "requires funds"; she would have to prove her *need* for such funds. If she had available private assets of $300,000.00 or any portion thereof, it is inconceivable that the court would permit an invasion of the principal of the charitable trust.

As was said in the dissent to the Merchants Bank case, 320 U.S. at page 263, 64 S.Ct. at page 112: "* * * The mere possibility of invasion of the corpus is not enough to defeat the deduction. * * * " Apparently the majority opinion does not hold contrary to that statement. In the case at bar is the corpus threatened by anything more than a possibility of invasion? I think not. Assume Mrs. Berry sustained a serious accident requiring much medical, hospital and nursing care. Since the income from her investments and trust at current rates is in excess of $19,000.00 a year, and since her ordinary living expenses range about $7,500.00 a year, she would have $11,500.00 a year to cover any unusual expenses. Even if she required an additional amount for a year or for several years, small withdrawals from her own capital would leave a large yearly income available for a long time in the future. It is, of course, possible that the rate of return on her investments in the future might be less than at the present time, but it is not foreseeable that there would be such a destruction of earning power that resort to the principal of her funds would be necessary, or that her principal would likely be depleted in her lifetime.

A number of decisions of the United States Tax Court since the date of the decision in the Merchants Bank case, supra, sustain the conclusion which I have reached in the case at bar. In Estate of Wetherill v. Commissioner, 1945, 4 T.C. 678, invasion was permitted "in the event trustor's said wife is or becomes incapacitated * * * for her care, maintenance and support," and also "for any extra-ordinary expenses caused by an emergency created by her injury, illness or disability." Her income was $8,000.00 a year and her annual living expenses $5,000.00. In Estate of Hume, 1 T.C. 1214, the will permitted invasion by the trustees "as they may deem reasonable to assist her on account of * * * sickness, accident, want or other emergency." The trust estate was valued at $130,000.00, with an annual income therefrom of $4,000.00. The life tenant was 54 years of age, married, and without dependents, and had an estate of her own worth $35,000.00. In Estate of Ben F. Sternheim, 2 T.C. 1270, the life tenant was 60 years old and had a total net income of $9,400.00 a year, with living expenses of $3,600.00 a year. The will permitted invasion "in the event of sickness, accident, want or other emergency." The court held that the possibility of invasion was so remote as not to affect the value of the charitable gift. On this phase of the case the decision was affirmed in Wells Fargo Bank and Union Trust Co. v. Commissioner, 9 Cir., 145 F.2d 132. Similar determinations were reached in Estate of Edwin E. Jack, 6 T.C. 241, and Estate of Lucius H. Elmer, 6 T.C. 944. In the latter case the court said, 6 T.C. at page 949: "In the Jack case the trustee had a discretionary power to use the principal for the 'comfort and support' of the testator's widow if they thought the income insufficient. We cited numerous cases holding that the terms 'comfort,' 'support' and 'maintenance' in varying combinations supplied the necessary objective standard limiting invasion of the corpus, and we concluded that the power there under consideration fell within the scope of the Ithaca and Hartford [Hartford-Connecti-

cut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710] cases, rather than the Merchants National Bank case and others holding that the use of such subjective terms as 'happiness,' 'pleasure,' 'use and benefit,' and 'desire' introduces elements too speculative to permit present ascertainment of the value of the charitable bequests. * * *" In Commissioner v. Bank of America National Trust and Savings Ass'n, 1943, 9 Cir., 133 F.2d 753, the testator bequeathed the residue in trust for the life of his sister, the trustee to pay her $250.00 a month, "and in case she should, by reason of accident, illness, or other unusual circumstances so require, such additional sum or sums as in the judgment of said trustee may be necessary and reasonable under the existing conditions." The remainder, after the sister's death, was payable to charities. The sister's annual expenses amounted to $1,450.00 per year and her own and the trust income amounted to about $5,000.00 per year. The court affirmed the decision of the Board of Tax Appeals by permitting a deduction of the charitable remainder. The court held that the Merchants National Bank case, supra, (as decided by the Circuit Court of Appeals) was distinguishable because there the will permitted invasion for "comfort and/or happiness" and stated that the Ithaca Trust case was closer to the facts.

The government cites with some confidence a case in this circuit, Estate of John J. Toeller v. Commissioner, 7 Cir., 165 F.2d 665, in which the Circuit Court of Appeals upheld the decision of the Tax Court. It clearly is distinguishable from the case at bar. The question there presented was whether a certain transfer in trust by the decedent was properly included in his gross estate for estate tax purposes. The clause in the trust agreement stated: * * * Should misfortune or sickness cause the expenses of Trustor to increase, so that in the judgment of the Trustee the net income so payable to Trustor is not sufficient to meet the living expenses of Trustor, then * * * the said Trustee is authorized to pay in addition to the income from said Trust Estate such portions of the principal of said Trust Estate as may

be necessary under the circumstances. Said Trustee is given the sole right to determine when payments from the principal sum shall be made and the amounts of said payments." The agreement further provided: "All discretions conferred upon the Trustee by this instrument shall, unless specifically limited, be absolute and uncontrolled and their exercise conclusive on all persons in this trust or Trust Estate." The court pointed out 165 F.2d at page 666: "* * * the trustor retained the conditional right to payment to himself of any part or the whole of the corpus, independent of the will of the trustee, hence, the transfers to the trust were intended to take effect in possession or enjoyment at or after his death * * * and the corpus of the trust was properly included in his gross estate for tax purposes." Furthermore, there was no showing that settlor's income was so greatly in excess of his possible needs that the likelihood of invasion was extremely remote, as is true in the case at bar.

Judgment may go for the plaintiff.