Estate of Mary P. Morse, by Lincoln Rochester Trust Company, as Executor v. Commissioner.
Estate of Morse v. Commissioner
Docket No. 18150.
United States Tax Court
1949 Tax Ct. Memo LEXIS 73; 8 T.C.M. (CCH) 856; T.C.M. (RIA) 49229; September 20, 1949
*73 Held, the residual value of an estate bequeathed to charity was impossible of ascertainment and hence not deductible under section 812 (d), I.R.C.
Scott Stewart, Jr., Esq., 31 Exchange St., Rochester, N. Y., for the petitioner. Clay C. Holmes, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency of $38,929.37 in the estate tax of the above named estate. The sole question presented is whether the value of the charitable remainders can be ascertained with sufficient accuracy so as to permit a deduction thereof under section 812 (d), Internal Revenue Code. This question is presented on the following facts: [The Facts] *74 Decedent, Mary P. Morse, died March 15, 1944, leaving a last will and testament which was duly admitted to probate in Surrogate's Court, Monroe County, New York, on April 28, 1944. The Rochester Trust and Safe Deposit Company, later merged with Lincoln-Alliance Bank and Trust Company, the name of the corporation being changed to Lincoln Rochester Trust Company, was named as executor in the will. The Federal estate tax return of the decedent's estate was filed with the collector of internal revenue for the 28th district of New York. After making various specific bequests the decedent, in paragraph SIXTH of her will, bequeathed to her trustee the entire residue of her estate in trust, to pay over the entire net income to Lillian MacDonald, who, for approximately 20 years prior to the decedent's death, had resided with the decedent as her nurse, companion and friend. Upon the death of Lillian MacDonald the principal then remaining was bequeathed in equal shares to the Rochester Friendly Home, the Hillside Home for Children of Rochester, New York, and the Rochester Community Chest, Inc., all of which institutions qualify as charitable organizations within the meaning of section 812 (d), I.R.C.
*75 Paragraph SIXTH of decedent's will also contains the following provision: "My said Trustee is authorized, empowered and directed also to advance from said residuary estate to the said Lillian MacDonald such sums of principal as may be necessary for her proper care, support and maintenance." In addition to the trust created for Lillian MacDonald, decedent made her a specific bequest of $10,000. In decedent's Federal estate tax return the petitioner claimed a deduction of $133,281.56, representing the commuted value at the date of decedent's death of the bequests to the above mentioned charities, which deduction the respondent disallowed on the ground that the provision authorizing the invasion of principal above quoted makes the charitable bequests too indefinite to permit a deduction thereof. The net value of decedent's estate as reflected in her Federal estate tax return was $272,169.71, consisting principally of listed stocks, bonds and cash. After the payment of specific bequests, of which there were several, inheritance taxes, debts and administration expenses, there remained $153,983.37 in her residuary trust created by paragraph SIXTH of the will above quoted. The *76 gross income of the trust above referred to trustee's commissions, miscellaneous expenses, income taxes paid on behalf of Lillian MacDonald by the trustee, and the net amounts paid to Lillian MacDonald, pursuant to the trust, for the five years and three months preceding the hearing, were as follows: Income taxes paid
Miscel-
by Trustee on
Gross
Trustee's
laneous
behalf of Miss
Paid to Miss
Year
income
Commissions
Expenses
MacDonald
MacDonald
1944
$ 4,442.95
$ 155.15
$1.14
$1,185.05
$ 2,864.95
1945
6,629.64
218.14
1,101.24
5,406.15
1946
6,997.56
226.96
1.23
891.39
5,958.75
1947
7,185.61
185.59
1,066.73
5,933.29
1948
7,964.45
139.03
916.51
6,578.13
1949
1,693.95
78.24
458.25
1,548.24
$34,914.16
$1,003.11
$2.37
$5,619.17
$28,289.51
At the date of decedent's death, Lillian MacDonald was 72 years of age and had a life expectancy of between seven and eight years. For approximately 20 years prior to decedent's death Miss MacDonald had resided with her as a nurse, companion and friend. At the time of decedent's death and for several years prior thereto Miss MacDonald was paid a salary *77 of $1,300 a year by decedent. For approximately 10 years prior to the death of decedent Lillian MacDonald owned a two family house located in Rochester, New York, the upper story of which was rented by her at a monthly rental of $30. Such property was assessed at $5,700 and was subject to a first mortgage of $3,700, and a second mortgage of $4,000, held by the decedent. In 1946 Lillian MacDonald received $2,181.28 by inheritance from her sister, who died in March of that year. Decedent was a member of a prominent Rochester family, occupying a high social position in the city. She had an income of approximately $11,000 per year. Prior to her employment by decedent, Lillian MacDonald had always worked as a professional nurse and it was as such that she entered the employ of decedent. Lillian MacDonald has never owned an automobile of her own but during decedent's life, in company with the decedent, she took several trips to Maine, Atlantic City, and elsewhere. The expenses for maintaining the property which Lillian MacDonald owns and where she now lives averaged $1,700 per year from 1945 through 1948. Other identified expenses established by the proof and paid by Lillian MacDonald *78 during the same period (exclusive of loans aggregating $2,700 made by her to a niece and brother), averaged approximately $2,500 a year. Aside from the foregoing identified expenses she withdrew from her bank accounts each year an average in excess of $2,000 per year above such expenses. Many additional expenses are paid for by her in cash. During the period from June 5, 1944 to March 15, 1949, Lillian MacDonald had total bank deposits of $37,064.11, from which she withdrew $35,658.43, leaving a balance after withdrawals of $1,405.68 on deposit on March 15, 1949. Lillian MacDonald received during the above period from the estate of decedent on account of legacy, etc., $10,362.47 and as income from the trust, $28,289.51; from rents, $1,280; and by inheritance from her sister, $2,181.28, making a total of all receipts, including the $10,000 legacy, of $42,113.26. The excess of receipts over deposits for approximately the five-year period was $4,049.15. She has never requested that the trustee invade the principal for her use. Lillian MacDonald has had one operation for the removal of a cataract from her eye and will require another operation in the near future. [Opinion] *79 The issue posed on the above facts is whether the value of decedent's residual bequests to the charitable institutions is sufficiently ascertainable to allow the deduction therefor under section 812 (d), I.R.C. Respondent raises no issue as to the character of the institutions named as charitable beneficiaries nor is there any question as to the present value of the interest bequeathed. Respondent contends that the above quoted provision in the trust empowering the trustees to invade corpus for the benefit of the income beneficiary renders the value of the charitable remainders so uncertain and unascertainable as to forbid a deduction of the value thereof from the gross estate. Determination of the issue above raised depends primarily on the precise phraseology of the will. In cases of this type where the invasion of corpus is limited to the amount necessary to sustain the life beneficiaries in living on the same plane as existed before the gift, a deduction has been allowed, on the authority of Ithaca Trust Company v. United States, 279 U.S. 151. It has also been held that a deduction is allowable where the established mode of living of the *80 beneficiary, coupled with her separate estate, or other factors show that there is little or no probability in fact that the principal of the trust will ever be invaded. Where, however, the donor inserts an additional element such as the happiness, pleasure or comfort of the beneficiary or directs a liberal exercise of the power to invade corpus, no deduction is allowed for the reason that such terms introduce an element of speculation which makes it impossible to calculate either the amounts to be spent during the life of the beneficiary or the amount of the remainder thereafter. Such a case was Merchants National Bank of Boston v. Commissioner (Field Estate), 320 U.S. 256. In the instant case the decedent's will authorized, empowered and directed the trustee to invade the corpus estate for the benefit of the beneficiary in "such sums of principal as may be necessary for her proper care, support and maintenance." The quoted provision clearly brings the case within the holding of this Court in Estate of John W. Holmes, 5 T.C. 1289, where the comparable provision was "to properly care for and maintain" the life beneficiary. In that case we said: "The *81 term 'proper' is not one of exactitude. The trustees, in the exercise of their discretion, might fairly conclude that it embraced the happiness and comfort of the beneficiary. Certainly, it does not restrict them to the amount necessary to continue the beneficiary's mode of living as it existed prior to the decedent's death. We make a comparable holding here. The will set up no standard by which we can gauge the amount of income necessary for use of the beneficiary. That extraordinary expenses, such as serious operations, might make it necessary for the beneficiary to call on the trustee for additional funds out of corpus is very clear when we look at the small balance remaining in the income account after five year's experience. There is nothing in the will which prevents the beneficiary from adopting a more liberal and extravagant manner of life. There is evidence in the beneficiary's testimony which leads us to conclude that the beneficiary felt resentment toward the trustee's attitude in attempting to limit her expenditures and that possibly she did not understand that the right to invade corpus existed. On the record before us we conclude the respondent committed no error *82 in his holding that the quoted provision of the will rendered the value of the residuary estate unascertainable and accordingly not deductible from the gross estate under favor of section 812 (d), I.R.C.
Decision will be entered for the respondent.