Louis G. **SHERMAN**, Jr., and **Randolph W. Commins**, Executors of the Estate of **Louis G. Sherman, Sr.**, under the Last Will and Testament of **Louis G. Sherman, Sr.**

v.

**UNITED STATES of America.**

Civ. A. No. 13890.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 27, 1973.

Haas, Holland, Freeman, Levison & Gilbert, Atlanta, Ga., for plaintiffs.

Julian Longley, Asst. U. S. Atty., Atlanta, Ga., Jay R. Weill, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## ORDER

O'KELLEY, District Judge.

Plaintiffs are the executors of the Estate of Louis G. Sherman, Sr., who died in 1964. Upon filing an estate tax return, the plaintiffs claimed a deduction for an obligation of the estate owing to the decedent's widow under a separation agreement. The deduction was disallowed by the Internal Revenue Service and the assessed taxes were paid by the plaintiffs. A claim was made for a refund and upon its disallowance, suit was filed. This case was previously tried by the Court on the issue of whether the estate's obligation under the separation agreement was supported by adequate consideration and judgment was entered for the plaintiffs. The government on the day of the first trial, attempted to amend the pretrial order to add the issue now before the Court. This Court rejected, as untimely, the contention that the obligation of the estate under the separation agreement was uncertain. Sherman v. United States, 334 F.Supp. 1311 (N.D. Ga.1971). The Government appealed the judgment to the Fifth Circuit, which ultimately affirmed this Court's holding on the question of whether the agreement was supported by consideration and remanded the case for a determination of the new issue of whether the estate's obligation under the separation agreement is unascertainable. Sherman v. United States, 462 F.2d 577 (5th Cir. 1972).

The facts are essentially undisputed. The estate's obligation to the widow originally arose out of a separation agreement entered into between Mr. and Mrs. Sherman in 1962. Its purpose was to settle property rights and provide for the maintenance and support of Mrs. Sherman. Under the settlement, payments of $1,500 per month were to be made to Mrs. Sherman until her death or remarriage. The agreement expressly provided that it was intended to bind Mr. Sherman's estate, and provision was made for the creation of a testamentary

trust to provide a fund from which payments would be made in the event Mr. Sherman predeceased his wife.

Prior to the 1962 separation agreement, Mr. Sherman created an irrevocable inter vivos trust for the benefit of his wife and their lineal descendants. This was established on October 17, 1969. The trust indenture provided that the trustees, in their sole discretion, could either accumulate or distribute all or any part of the net income or corpus of the trust to his wife or lineal descendants. When the 1962 separation agreement was executed, it was provided that the testamentary trust would merely make up the difference between the amount distributed to Mrs. Sherman from the inter vivos trust and the $1,500 per month promised her under the separation agreement.

In 1964, Mr. Sherman executed his will whereby he established the testamentary trust agreed upon. The trustees of the testamentary trust were to be the same as the trustees of the inter vivos trust. Here again the decedent expressed his intent that his wife receive at least $1,500 per month from both trusts.

On the estate tax return filed by the plaintiffs, the commuted value ($129,-040.23) of the estate's contingent obligation to pay the entire $1,500 per month to decedent's wife was deducted from the gross estate. The Government contends that the actual amount of money to be paid Mrs. Sherman by the decedent's estate is not ascertainable, since it depends upon the amount she receives from the inter vivos trust. This contention presents the sole question for determination: Whether or not the value of the estate's obligation to pay Mrs. Sherman a monthly sum is unascertainable, and hence nondeductible. This question is a legal one, involving the construction and legal effect to be accorded the various documents.

Section 2053 of the Internal Revenue Code of 1954 authorizes a deduction from the gross estate of a decedent "for claims against the estate, as are allowable by the laws of the jurisdiction . . . under which the estate is being administered." Int.Rev.Code of 1954, § 2053(a)(3). The treasury regulations which implement this statutory provision permit a deduction of the claim if its value "is ascertainable with reasonable certainty." Likewise, a deduction cannot "be taken upon the basis of a vague or uncertain estimate." Treas.Reg. § 20.2053–1(b). This regulation is an appropriate implementation of § 2053 and defines the framework of inquiry in this case.

No case has been cited by counsel on either side expressly resolving the issue before the Court. The Government relies upon certain "charitable remainder" cases in support of its argument. The plaintiffs contend that these cases have no application to the issue involved. This necessitates a discussion by the Court in order to determine their applicability.

In the much-cited case of Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647 (1929), the decedent's Will provided for income from a trust to be paid his widow for life, with a remainder to charity. The Will further authorized invasion of the principal in favor of decedent's wife in such sums as " 'may be necessary to suitably maintain her in as much comfort as she now enjoys.' " Id. at 154, 49 S.Ct. at 291. The issue was whether the provision for the wife's maintenance made the value of the charitable remainder so uncertain that a deduction could not be allowed. This was answered in the negative, with the Court noting that disbursements of principal were not wholly discretionary with the trustee. The Court found a fixed standard which was capable of being stated in money terms.

Another case before the Supreme Court was Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L. Ed. 35 (1943). Here there was a similar charitable remainder trust, but the Will provided for invasion of the trust

corpus for " 'the comfort, support, maintenance and/or happiness of my wife.' " *Id.* at 261, 64 S.Ct. at 111. Likewise, the trustee was enjoined to be liberal and consider the wife's " 'welfare, comfort, and happiness prior to the claims of residuary beneficiaries.' " *Id.* at 261, 64 S.Ct. at 111. The Court found, contrary to the *Ithaca Trust* case, that ". . . the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life." By using the unmeasurable element "and/or happiness of my said wife" the Court could not find a "standard fixed in fact and capable of being stated in definite terms of money." 279 U.S. at 154, 49 S.Ct. at 291. *Cf.* Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667 (1928), Henslee v. Union Planters Nat. Bank and Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949).

The plaintiffs suggest that an analogy, between the two cases discussed and the facts here presented, is too forced. Of course, both these cases are readily distinguishable; however, certain principles enunciated apply to the present situation. Plaintiffs claim this is not a case of two obligations, one charitable and one private, but there is but one obligation of a fixed amount. Likewise, even though payments from the inter vivos trust, if made, would be a credit to the estate, this does not derogate the fixed obligation of the estate. Such reasoning fails to recognize that decedent's Will expressly provides that disbursements from the estate are conditioned upon disbursements received by Mrs. Sherman from the inter vivos trust. Thus, the estate's obligation cannot be ascertained without reference to the terms of the inter vivos trust. The inter vivos trust provides that the trustees may "in their sole discretion, either accumulate or distribute" all or any part of the income or corpus "in any amount or proportion with no requirement of equalization between the beneficiaries." There are no express limitations upon this discretion which would help the Court ascertain its value. Furthermore, state law provides none. E. g., Cates v. Cates, 217 Ga. 626, 124 S.E.2d 375 (1962). Like the holding in *Merchants Bank*, there appears to be no way for this Court to value "with reasonable certainty" the obligation of the estate.

Since the estate is large enough to pay the full obligation, the plaintiffs assert that the trustees should be credited with acting in their own "tax interest." They claim that this would occur by making the full $1,500 per month payment from the estate, and, therefore, not pay decedent's wife any amount from the inter vivos trust. Such is a misconception of the law. The controlling issue, with respect to powers of invasion, is not what the trustees are likely to do, but what lies within their power. Here the power to disburse income or principal from the inter vivos trust is not limited by an ascertainable standard. See, Zentmayer's Estate v. Commissioner of Internal Revenue, 336 F.2d 488 (3rd Cir. 1964). Plaintiffs further argue that the *income* from the inter vivos trust has never been large enough to pay the whole obligation. (The plaintiffs claim that the inter vivos trust has produced only $6,000 per year, leaving the estate a definite obligation of $12,000 per year.) The answer to this is that the trust instrument, rather than extrinsic circumstances, must "furnish the basis for an objective standard" of certainty. Seubert v. Shaughnessy, 233 F.2d 134, 137 (2d Cir. 1956), Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3rd Cir. 1971). The Court has reviewed the plaintiff's other contentions and they are found to be without merit.

The Clerk is directed to enter judgment for the defendant.