ESTATE OF REBECCA ROBERTS SHELLY a/k/a REBECCA R. SHELLY, REBECCA R. ANTHONY, REBECCA McINNES ROBERTS, REBECCA McINNES ROBERTS SHELLY and REBECCA M. SHELLY, c/o AMERICAN BANK AND TRUST CO. OF PA., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Shelly v. Commissioner
Docket No. 1739-75.
United States Tax Court
T.C. Memo 1986-362; 1986 Tax Ct. Memo LEXIS 235; 52 T.C.M. (CCH) 138; T.C.M. (RIA) 86362; August 11, 1986. David *236 M. Jordan, for the petitioner. James P. Clancy, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $78,341.69; petitioner claimed an estate tax refund in the amount of $306,800.60, plus interest. After concessions, the sole issue for decision is whether petitioner is entitled to a charitable contribution deduction pursuant to section 2055. [1]
FINDINGS OF FACT Rebecca Roberts Shelly (Decedent) died on February 16, 1971; petitioner is her estate. Petitioner's legal residence at the time the petition was filed was Norristown, Pennsylvania. By will dated November 12, 1965, [2] the Decedent bequeathed to Peter S. Anthony, in trust, an amount equal to "the full Marital Deduction." Anthony was to receive the entire income from the marital deduction trust for life, on a quarterly basis, and he was given a testamentary power of appointment over the trust corpus. The Decedent *237 bequeathed the balance of her estate to Peter S. Anthony, as her husband, in trust for his life, with the remainder to the Roberts Shelly Foundation (the Foundation), a charitable organization established by the Decedent in 1955. The Decedent gave the trustee of both trusts, who was Anthony, the power to "invade the principal of both trusts for my said Husband's benefit," first exhausting the corpus of the marital deduction trust and then that of the residual trust. Contrary to the representations in the Decedent's will that she was Anthony's wife, the Decedent was unmarried at the time of her death and no Peter S. Anthony existed. In reality, the Decedent was a widow, previously married to Issac Shelly, M.D., who died in 1942. The person to whom the Decedent's will referred was Peter Pallitto, a friend of the Decedent and *238 nearly forty years her junior. At all relevant times, Pallitto was married and lived with his wife and two children in Atlantic City, New Jersey. The Decedent, a lawyer, harbored an intense hatred of taxes and over the years filed joint income tax returns in the names of Rebecca and Peter Anthony, thereby saving a substantial amount of income taxes. Pallitto was the named executor in the Decedent's 1965 will, but he renounced his right to so act. Further, Pallitto made no claim to any of the Decedent's assets. Pallitto died on June 4, 1973; his will did not refer to, or purport to exercise, any power of appointment over the trust property bequeathed to him by Rebecca Roberts Shelly. In 1975, the trustee ad litem of the Foundation and the Deputy Attorney General of Pennsylvania, as parens patriae, petitioned the Court of Common Pleas of Montgomery County, Pennsylvania, Orphans' Court Division (the Orphans' Court), to "enter a decree interpreting, reforming and modifying the testamentary writings of [Decedent] in a manner which will meet the requirements for obtaining a tax exemption or deduction under the provisions of the Federal tax law." Among other things, the petition *239 stated, "It might be essential for the purpose of a deduction * * *, that this petition and proceedings to amend or interpret Decedent's testamentary writings be instituted on or before December 31, 1975 to meet the requirements of section 2055(e)(3) of the Internal Revenue Code." Notice of the filing of the petition was sent to the executrix of Pallitto's estate, and to Mr. Naame, the attorney retained by the Pallitto estate, as well as to Decedent's intestate heirs and the United States Department of Justice. In separate proceedings in the Pennsylvania Supreme Court, the Decedent's 1965 will was held valid, despite attempts by the Decedent's intestate heirs to have it set aside. See Estate of Shelly,484 Pa. 322, 399 A.2d 98 (decided March 14, 1979, reargument denied April 10, 1979). At that time, Pallitto's estate had not made any claim to the Decedent's estate. Although the court was not concerned with the enforceability of the purported bequests to Pallitto, it noted that if the bequests to Pallitto were unenforceable, then under Pennsylvania law, the interest which the will purported to bequeath to Pallitto would pass to the residuary *240 beneficiary, i.e., the Foundation. In 1979, once the validity of the Decedent's will had been established, the Orphans' Court responded to the 1975 petition to reform by entering an order dated June 20, 1979, which modified and reformed the Decedent's 1965 will to provide for her entire estate to pass to the Foundation, "there being no valid intervening life estate, thereby qualifying for a charitable deduction for Federal estate tax purposes under the Internal Revenue Code." The Pennsylvania Supreme Court, in its March, 1979 decision, held that the Decedent's intestate heirs could not succeed in setting aside the Decedent's will, but as previously discussed, it did not adjudicate the rights of Pallitto or his estate to take thereunder. Mr. Huganir, the intestate heirs' attorney, then solicited representation of the estate of Pallitto.[3] As the newly-retained counsel for Pallitto's estate, Mr. Huganir appealed to the Supreme Court of Pennsylvania to set aside the June 20, 1979 reformation order of the Orphans' Court, arguing that the Orphans' Court had no authority to reform the Decedent's 1965 will by issuing the June, 1979 order, which "cut out all gifts to 'Peter S. Anthony' *241 and, secondly, changed [Decedent's] Will to include a single outright legacy of her entire estate to her family charity, the Roberts Shelly Foundation." Mr. Huganir argued that because undecided questions remained as to Pallitto's right to share in the Decedent's estate, the June 20, 1979 reformation order should be set aside as premature. The Pennsylvania Supreme Court, on December 17, 1981, affirmed the reformation order and ordered the estate of Pallitto to pay the costs of the appeal. Estate of Shelly,496 Pa. 404, 437 A.2d 936 (1981). On February 12, 1982, at a hearing on the administrator pendente lite's third accounting, the Orphans' Court noted that any claim by the Pallitto estate to assets in the Shelly estate had been "definitively foreclosed." It ordered the administrator pendente lite to distribute the assets of the Shelly estate directly to the Foundation, [4] except that $10,000 was to be held by the estate in reserve in *242 order to meet expenses and counsel fees incident to the continued processing of claims for refund of Federal taxes. The executrix of Pallitto's estate, still represented by Mr. Huganir, filed exceptions to the February 12, 1982 adjudication, asserting that the validity of any claim by Pallitto's estate had never been decided, and that valid disclaimers by Pallitto's estate of the right to share in Decedent's estate had not been made. The Orphans' Court, in its opinion issued on October 28, 1982, agreed with Pallitto's estate and, referring to its June 20, 1979 reformation order as "error," sustained the exceptions filed by Pallitto's estate. The Foundation and the Deputy Attorney General of Pennsylvania, as parens patriae, appealed the order of the Orphans' Court to the Superior Court of Pennsylvania. [5] Mr. Huganir, in his brief, contended that the October 28, 1982 order was not a final order (and was *243 therefore not appealable) because no court had passed on the merits of Pallitto's estate's claim that it was entitled to share in the Decedent's estate. Huganir claimed that Pallito was not disqualified from being a beneficiary of the Decedent's will merely because he and the Decedent had not been married. Huganir also claimed that the June 20, 1979 order was not served on the United States, and the United States was a necessary party to the proceedings to amend the Decedent's will. The superior court, on October 7, 1983, held that the Pennsylvania Supreme Court's decision of December 17, 1981, which affirmed the June 20, 1979 order, was dispositive of the appeal before it. Accordingly, the Orphans' Court's October 28, 1982 order was vacated and the June 20, 1979 order was reinstated. In December, 1983, the Pennsylvania Supreme Court denied Pallitto's estate's petitions for review and clarification *244 of its December 17, 1981 decision. [6]
On March 4, 1985, Mr. Huganir again resorted to the Orphans' Court. He petitioned the court to review its June 20, 1979 and February 12, 1982 orders and to "grant such relief as equity and justice require including a new distribution order free of errors." The basis for such review, according to the petition, was the absence of proof that the petition *245 to reform was served on Mr. Naame (Pallitto's estate's counsel at the time the petition to reform was filed) or on the United States, and there had been fraudulent misrepresentations by counsel that service had in fact been effected. The Orphans' Court, on May 15, 1986, held that the issues before it was res judicata due to the opinions and orders of the supreme court dated December 17, 1981, and of the superior court dated October 7, 1983. In re: Estate of Rebecca Roberts Shelly, No. 73068. The Orphans' Court expressed its hope that its decision would "mark the final chapter of this litigation, and [would] put an end to Mr. Huganir's indefatigable use of the judicial system to further the interests first of the intestate heirs and then the estate of Pallitto." The end to the litigation of the Shelly case in the Pennsylvania State courts apparently is still only a hope, as Mr. Huganir has appealed the Orphan Court's May 15, 1986 decision to the Pennsylvania Superior Court. Respondent contends that although the Shelly estate has been a party to protracted litigation, the Pennsylvania courts have never adjudicated the right, if any, of Pallitto's estate to share in the *246 Shelly estate. Respondent claims that the bequest to Peter S. Anthony has never been held null or void. Because Pallitto's estate may have a valid claim to part of Decedent's estate, argues respondent, the bequest to the Foundation was that of the remainder portion of a "split interest" bequest which does not qualify for the charitable contribution deduction under section 2055(e). In support of its claims, respondent, at the trial of this case, called as a witness the Honorable Kendall Shoyer. Judge Shoyer issued the June 20, 1979 order and authored the October 28, 1982 opinion which attempted to reverse the June 20, 1979 order. Judge Shoyer was permitted to testify over petitioner's objection; this Court expressly reserved its judgment as to whether Judge Shoyer's testimony would be considered. Petitioner argues that the Decedent's will was construed by the Pennsylvania State courts to pass the Decedent's entire estate to the Foundation, with no intervening interest bequeathed to Pallitto. Therefore, petitioner contends, the contribution to the Foundation is deductible under section 2055(a). OPINION *247 Section 2055(a) allows an estate tax deduction, commonly called the charitable deduction, for the "amount of all bequests, legacies, devises or transfers" to or for the use of enumerated qualified recipient organizations including "any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes." There is no dispute but that the Foundation is a qualified recipient organization. When an individual has an intervening interest in the property which passes from a decedent to a charitable organization, the interests of the individual and the charity are commonly called split interests. The rules which determine the tax consequences of devising split interests are described below. In general, a charitable deduction is not allowed for the charitable portion of a split interest unless the gift to charity is in one of three prescribed forms. [7]Section 2055(e)(2)(A). Section 2055(e)(2)(A) was enacted by the Tax Reform Act of 1969, Pub. L. 91-172, section 201(d), 83 Stat. 560. The Foundation's interest was not in one of the three prescribed *248 forms. However, where a nonqualified charitable remainder interest is created by a will executed prior to September 21, 1974, a charitable deduction is allowed if proceedings to reform the will (so as to qualify under section 2055(a)) are instituted prior to January 1, 1976. Section 2055(e)(3). Reformation of a will executed prior to September 21, 1974 is unavailable, however, if the charitable remainder interest would have been nondeductible even prior to the enactment of section 2055(e)(2), [8] and section 2055(e)(2) does not apply to property passing under the terms of a will executed on or before October 9, 1969, if the decedent died before October 9, 1972, without having republished the will after October 9, 1969, by codicil or otherwise. In such a situation, prior law applies. Section 201 (g)(4)(B), Tax Reform Act of 1969, supra.
The petition to reform the Decedent's *249 will was partly based upon the assumption that the Foundation received a nonqualified remainder interest, and that if the will were reformed, a deduction under section 2055(a) would be available. Since the Decedent's will was executed in 1965, and she died in 1971 without having republished her will, section 2055(e)(2) did not apply. The portion of the petition requesting reformation of the Decedent's will to meet the requirements of section 2055(e)(3), therefore, was neither necessary nor sufficient to insure that the charitable remainder interest created by the Decedent's will would be deductible. The deductibility of a charitable remainder interest in these circumstances did not depend on the provisions of the Tax Reform Act of 1969, but on prior law. Prior to the enactment of section 2055(e)(2), the deductibility of a charitable remainder interest depended on whether the remainder interest was severable from the noncharitable interest, so that the amount passing to the charity was accurately calculable as of the date of death. Esate of Humbert v. Commissioner,70 T.C. 542 (1978). *250 Where the charitable remainder interest was subject to a power of invasion, and the power was not limited by any ascertainable standard, the remainder interest was not severable from the noncharitable interest and was therefore not deductible. Estate of Humbert,supra.A trustee's power to invade trust corpus "for the benefit" of the beneficiary is not a power which is limited by an ascertainable standard. Ithaca Trust Co. v. United States,279 U.S. 151 (1929); Merchants Bank v. Commissioner,320 U.S. 256 (1943); Estate of Humbert v. Commissioner,70 T.C. 542 (1978). If the Foundation received a remainder interest under the Decedent's will (i.e., if there was a valid intervening bequest to Pallitto), the Foundation's interest was subject to a power of invasion not limited by an ascertainable standard; therefore, under prior law, the bequest of the remainder interest to the Foundation was nondeductible. Even if section 2055(e)(2) applied, and the will were subsequently amended to comply with the requirements of section 2055(e)(2), the remainder interest would be nondeductible, because the remainder interest did not otherwise *251 qualify for deductibility. The Decedent's bequest to the Foundation, therefore, is deductible only if Decedent's will did not create split interests. In order to determine whether the Foundation received only a remainder interest, we must determine whether the bequests to Peter S. Anthony were valid as a matter of State law. If so, the bequests to the Foundation were that of a nondeductible remainder interest. If the bequests to Peter S. Anthony were invalid as a matter of State law, the bequest to the Foundation was that of a direct, present interest, which is deductible. In making our determination, we are mindful that a decision on this point by the Supreme Court of Pennsylvania would be dispositive. Commissioner v. Estate of Bosch,387 U.S. 467 (1967). In the absence of a controlling decision by the Supreme Court of Pennsylvania, we must apply what we find to be the law of the Pennsylvania, after giving "proper regard" to relevant rulings of other courts of the State. Commissioner v. Estate of Bosch,supra;Estate of Sawyer v. Commissioner,73 T.C. 1 (1979). The Foundation and the Deputy Attorney General, when they *252 petitioned the Orphans' Court to reform the Decedent's will, apparently were unaware that section 2055(e)(2) did not apply and that reformation of the will under section 2055(e)(3) was unavailable. Their petition therefore stated that "[i]t might be essential that this petition and proceedings to amend or interpret decedent's testamentary writings be instituted on or before December 31, 1975 to meet the requirements of section 2055(e)(3) of the Internal Revenue Code." To the extent that the Foundation received only a remainder interest, the Foundation and the Deputy Attorney General hoped to preserve the estate tax charitable contribution deduction. The same petition, however, raised another ground for reforming Decedent's will, by suggesting that any claim by Pallitto or his estate to an income interest in the Shelly estate had been lost. The petition further alleged that the only persons who had any claim to the estate were the Foundation and the Decedent's intestate heirs. Finally, the petition alleged that no Federal estate taxes would be payable if the entire estate, subject only to administration expenses, were distributable to the Foundation. These *253 statements in the petition necessarily implied that the bequest to the Foundation was not that of a remainder interest subject to reform, but of a direct, present interest in the Decedent's entire estate. The result of these allegations was the order of June 20, 1979, which provided that the Decedent's entire estate passed to the Foundation because there was no valid intervening life estate. The Orphans' Court did not attempt to reform the will pursuant to section 2055(e)(3). Rather, the Orphans' Court interpreted the bequest to the Foundation as a direct bequest, which is deductible as a charitable contribution under section 2055(a). When the June 20, 1979 order was issued, Pallitto's estate had not asserted that it had any interest in the Decedent's estate. The first time such a claim was formally advanced was later in 1979, when Pallitto's estate appealed to the Supreme Court of Pennsylvania to set aside the June 20, 1979 decree. We believe that the Supreme Court of Pennsylvania has adjudicated the rights of the Foundation and Pallitto's estate to share in the Decedent's estate. In our opinion, under Pennsylvania law, Pallitto's estate has no claim to any part of Shelly's *254 estate, the bequest to Peter S. Anthony was void ab initio, and the Decedent's entire estate passed directly to the Foundation. Thus, petitioner is entitled to a charitable contribution deduction in an amount equal to the Decedent's entire estate. The order of June 20, 1979 purported, in Mr. Huganir's own words, to "cut out all gifts to 'Peter S. Anthony.'" Indeed, every appeal and petition filed by Pallitto's estate in the State courts of Pennsylvania has been an attempt to overturn the June 20, 1979 order. The Supreme Court of Pennsylvania affirmed the June 20, 1979 order in spite of Mr. Huganir's claim that Pallitto's estate might have an interest in the Shelly estate. The subsequent proceedings in the Pennsylvania State courts confirm our conclusions, as stated above. Although Mr. Huganir persuaded the Orphans' Court to overturn the June 20, 1979 order, the order overturning the June 20, 1979 order was itself vacated by the intermediate appellate court of Pennsylvania.Also, the recent May 15, 1986 decision of the Orphans' Court is consistent with our conclusion that Pallitto's estate had no claim to any part of Shelly's estate. Although Mr. Huganir has taken an appeal *255 from the May 15th decision, and we are loath to anticipate the outcome of that appeal, we believe it best not to further delay our decision in this case pending the outcome of the appeal. In reaching our decision, we have not relied upon the testimony of Judge Shoyer. Because we find that petitioner is entitled to deductions (either for charitable contributions or for administrative expenses) equal in amount to the entire estate, we need not consider whether petitioner is entitled to a further deduction for increased administrative expenses. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and as in effect at the time of the decedent's death.↩
2. The Decedent also executed a will dated 1969, but because of apparent alterations, that will was not admitted to probate. Estate of Shelly,463 Pa. 430, 345 A.2d 596↩ (1975). The 1965 will was probated by the Register of Wills of Montgomery County, Pennsylvania on April 20, 1979, after lengthy litigation in the Pennsylvania courts.
3. Mr. Huganir solicited representation of Pallitto's estate while his petition for rehearing by the Pennsylvania Supreme Court, filed on behalf of the Decedent's intestate heirs, was pending. It was subsequently denied.↩
4. Actually, the Foundation assigned its interest in the Shelly estate to the Montgomery County Foundation, which is also a charitable organization. For convenience, and because the assignment does not affect our analysis, both institutions are referred to as the Foundation.↩
5. While this appeal was pending, a number of procedural events transpired (e.g., a correction of record order which purported to revise the June 20, 1979 modification order was filed), all of which were disposed of by the superior court's decision in favor of the Foundation.↩
6. Mr. Huganir next attempted to bring his case into Federal District Court by alleging that his clients had been deprived of due process. The United States District Court for the Eastern District of Pennsylvania found that the complaint amounted to a request of a Federal District Court to review a State court's decision, and dismissed the case for lack of jurisdiction. Estate of Pallitto v. Estate of Shelly, No. 84-0974 (E.D. Pa., July 31, 1984). The dismissal by the District Court was appealed to the Court of Appeals for the Third Circuit. The Court of Appeals affirmed the dismissal by the District Court and, because it considered the appeal frivolous, assessed double costs against Pallitto's estate. Estate of Palitto v. Estate of Shelly,↩ No. 84-1485 (3d Cir., Feb. 12, 1985).
7. The three prescribed forms are a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund.↩
8. Estate of Humbert v. Commissioner,70 T.C. 542↩ (1978).