**BANKERS TRUST COMPANY and Leonard M. Wallstein as Executors of the Will of Charles Newman, deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
March 27, 1961.

Wallstein, Menschel & Wallstein, New York City, for plaintiffs, Leonard M. Wallstein, Benjamin Menschel and Leonard M. Wallstein, Jr., New York City, of counsel.

Morton S. Robson, U. S. Atty., for Southern Dist. of New York, New York City, for defendant, Lola S. Lea, Asst. U. S. Atty., New York City, of counsel.

PALMIERI, District Judge.

■ This is an application pursuant to Fed.R.Civ.P. 60(b), 28 U.S.C.A. for relief from the order of this court, dated December 29, 1960, granting the Government's motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment.[1] In dismissing plaintiffs' tax refund claim, I ruled in favor of the Government's contention that statistical data, without more, was insufficient to demonstrate that the possibility of the birth of issue to a 47 year old married female life tenant was "so remote as to be negligible."

The decision on the motions for summary judgment upholds the Commissioner's determination concerning the application of the standard described in U.S. Treas. Reg. 105, § 81.46 (1942) to the facts presented here. It was my conclusion, based upon an examination of the existing precedent that, in addition to statistical data applicable to the generality of cases, it was reasonable to require plaintiffs to come forward with some evidence bearing on this particular case tending to show either the life tenant's poor health or her incapacity to bear issue due to surgery or natural causes.[2] In discussing a relevant opinion of the Court of Appeals for the Second Circuit, City Bank Farmers' Trust Co. v. United States, 1935, 74 F.2d 692, 693, and a recent Revenue Ruling, Rev. Rul. 59–143, 1959–1 Cum.Bull. 247, in which the Commissioner looked to the Second Circuit opinion as authority for his conclusion, I noted that official statistics showed no recorded births to women of 55 years and over, referring to Judge Augustus Hand's observation that "since verification of offspring to women of 55 years and over began to be attempted by the United States Department of Commerce, there have been from the years 1923 to 1932, inclusive, no recorded births to such women."

Plaintiffs now point out that, according to the most recent Department of Commerce statistics, i. e., those available to the Commissioner at the time of his 1959 ruling favorable to the taxpayer where one of the life tenants was a 55 year old female, first births to women of 55 years and over have occurred. However, the new affidavit and exhibits prepared by a professional actuary and sub-

---

1. Since plaintiffs have filed a notice of appeal, it is clear that, in the absence of a remand by the appellate court, this court lacks power to grant the requested relief. Under these circumstances, the appropriate procedure is not free from doubt. See 7 Moore, Federal Practice, ¶ 60.30 [2] (2d ed. 1955, Supp.1960). Following the suggestion of the Court of Appeals for the District of Columbia in Smith v. Pollin, 1952, 90 U.S.App.D.C. 178, 194 F.2d 349, I have considered the issues presented and have determined that, were the matter properly before me, I would deny the motion on the merits. See Freedman v. Overseas Scientific Corp., D.C.S.D.N.Y.1957, 150 F.Supp. 394, 397. Cf. Fed.R.Crim.P. 33, 18 U.S. C.A., United States v. Minkoff, 2 Cir., 1950, 181 F.2d 538.

2. I find no basis for plaintiffs' assertion, in their second ground for this motion, that my conclusion was of a different character. At page 676 of the opinion in 190 F.Supp. I stated:

"Where, as here, there has been no evidence of poor health or incapacity due to surgery or natural causes, the existing precedent indicates that, in the case of a 47 year old woman, statistical data is insufficient to meet the requirement of section 81.46(a)."

My further statement that "I do not reject the statistics offered by plaintiffs as without evidentiary value" was not intended to suggest that the particular statistics presented were incomplete or that the method of computation was improper. My point was simply this: Had plaintiffs introduced evidence tending to show the physical incapacity of the life tenant, Mrs. Hughes, I would have considered the statistical data as affecting the strength of such proof.

mitted by plaintiffs reveal quite plainly the marked drop in the number of births at age 50 and over.[3] Indeed, although the statistics show that a first birth to a woman of 55 and even beyond is within the realm of possibility, the chance of such an occurrence is so minimal that for the past 12 years there has been no attempt to publish age details for new mothers beyond 50. Nonetheless, it is urged in support of this motion that the Commissioner's willingness to permit a deduction for a charitable remainder without looking for evidence of the physical condition of a 55 year old female life tenant should lead this court to reexamine its holding as to the appropriate disposition of a case involving a 47 year old female life tenant.

Neither this court nor the Court of Appeals in the City Bank Farmers' Trust Co. case attempted to specify the earliest age at which statistical data alone should suffice to demonstrate the remote possibility of the birth of issue to a female life tenant. Nor, contrary to plaintiffs' present assertion,[4] has there been any judicial determination by this court that the line must be drawn at the point where, according to the statistics, birth of issue does not occur. The Court of Appeals did suggest that "if the Commissioner had adopted a regulation whereby a request to charity conditioned upon the failure of issue to a woman of 50 years of age and upwards would be deductible in determining the net estate subject to taxation, [the court] should deem it entirely reasonable." Thus far, the Commissioner has not adopted such a regulation. He has ruled that he will accept as determinative the remote statistical probability of the birth of issue to a 55 year old woman. However, as evidenced by the Government's position in this case, where the life tenant is a 47 year old

---

3. See affidavit of Paul H. Jacobson, Feb. 19, 1961, p. 4: "[A]t age 49 and at age 50 and over the number of births drops off sharply." Exhibit B to Mr. Jacobson's affidavit includes the following statistical data:

"Exhibit B

Registered First Live Births, White Females
United States

| Mother's Age | 1948 * (p. 165) | 1947 (p. 165) | 1946 (p. 184) |
|---|---|---|---|
| 47 | 29 | 32 | 18 |
| 48 | 14 | 7 | 9 |
| 49 | 7 | 10 | 8 |
| 50 | 0 | 1 | 4 |
| 51 | 1 | 3 | 0 |
| 52 | 0 | 3 | 1 |
| 53 | 0 | 2 | 0 |
| 54 | | | 1 |
| 55 | | | 2 |
| 56 | 10 | 14 | 2 |
| 57 | | | 1 |
| 58 | | | 1 |
| 59+ | | | 0 |

* Last year, with published age detail beyond 50.

Source: National Office of Vital Statistics, *Vital Statistics* of the United States, Vol. II.

Paul H. Jacobson
2–8–61"

---

4. Plaintiffs assert, as a first ground for this motion, that my opinion was predicated upon a distinction between ages at which the statistics showed no births and ages at which the statistics showed few births.

woman, the Commissioner is unwilling to reject as insignificant the distorting effect upon the statistical data of the volitional element and the possible inducement to have progeny.

In view of the judicial expressions discussed in my opinion of December 29, 1960 recognizing the distinction between probabilities applicable to the generality of cases and evidentiary requirements in particular instances, I cannot agree that the Commissioner has unreasonably interpreted and applied Treas. Reg. 105, § 81.46 (1942) in the situation presented here or that his ruling with respect to a 55 year old woman obligates him to disregard in the case of a 47 year old woman the factor of individual volition.

Accordingly, plaintiffs' motion is denied in all respects.

So ordered.