**ESTATE of Sol SCHILDKRAUT, Deceased, Eugene Schildkraut and Lester Schildkraut, Executors, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 354, Docket 30223.**

United States Court of Appeals Second Circuit.

Argued May 24, 1966.

Decided Oct. 27, 1966.

ther to decedent's widow or to a bona fide charity. For reasons set forth below, we conclude that the decision of the Tax Court to deny both deductions was unjustified; we hold that at least a charitable deduction is warranted.

The facts before us are not complex. Sol Schildkraut, a New York resident, died testate on September 24, 1959; the value of his estate was slightly under one million dollars.[1] He was survived by his widow, Golda Perl Dickerson Schildkraut, who was forty-seven years old at his death. Article Seventh of his will created a trust with the principal amount of $300,000; his executors were directed to pay to Mrs. Schildkraut during her lifetime $1,000 a month out of income of the trust and if the income was insufficient, out of principal. The executors were also directed to pay out of the trust corpus federal and state income taxes on any sums paid to the widow from the trust and the real estate taxes on certain property in Florida so long as she continued to own it. Any trust income in excess of $12,000 a year was to be paid to The Schildkraut Foundation, Inc. ("the Foundation"), a New York charitable corporation. Upon the death of Mrs. Schildkraut, the remaining principal of the trust and accumulated income vested in the Foundation.[2] The Foundation has

Charles M. McCarty, Brooklyn, N. Y. (George C. Wildermuth, Brooklyn, N. Y., on the brief), for petitioners.

Solomon L. Warhaftig, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Washington, D. C., Attorneys, on the brief), for respondent.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

The issue in this case is whether a decedent's estate should be denied both a marital and charitable estate tax deduction for the corpus of a trust even though the entire corpus must ultimately go ei-

1. Decedent's gross estate was valued at $994,505.83, and his adjusted gross estate at $931,025.30.

2. Article Seventh of the will provided as follows:

*Seventh*: I direct my Executors to set aside in trust out of my estate the sum of Three hundred thousand ($300,000.00) Dollars. I give, devise and bequeath the same to the Trustees hereinafter named, In Trust, Nevertheless, to hold, manage, invest and re-invest the same, to collect the income, and out of the net income, and if the net income is insufficient then out of the principal, to pay to my wife, *Golda Perl Dickerson Schildkraut*, the sum of One thousand ($1,000.00) Dollars on the first day of each calendar month during her lifetime. Until the trust herein provided is established, I direct my Executors to pay to my wife, *Golda Perl Dickerson Schildkraut*, the sum of One thousand ($1,000.00) Dollars a month out the income of my general estate. In the

event, said *Golda Perl Dickerson Schildkraut*, is required to pay Federal and State Income Taxes on said sums paid to her from this trust, these Federal and State Income Taxes should be paid for her from the principal of the said trust. I further direct that during the period of time said *Golda Perl Dickerson Schildkraut*, retains ownership of the real property at 202 Indian Road, Palm Beach, Florida, situated in the Town of Palm Beach, Palm Beach County, Florida, all real estate Taxes on said property to be paid from the principal of the trust fund. The payments of all real estate Taxes on the real property at 202 Indian Road, Palm Beach, Florida, situated in the Town of Palm Beach, Palm Beach County, Florida, are to cease upon sale or transfer of said real property by *Golda Perl Dickerson Schildkraut*. I further direct that any income in said trust in excess of the Twelve thousand ($12,000.00) Dollars per year required to be paid to

the attributes necessary to entitle the estate to a charitable deduction.

After some preliminary changes of position, petitioners Eugene Schildkraut and Lester Schildkraut, executors of the estate, sought in the Tax Court a charitable deduction of $55,431.55, or a marital deduction for all or part of the $300,000 principal of the trust.[3] The Tax Court denied any deduction with respect to any part of the $300,000 corpus of the trust. 24 CCH Tax Ct.Mem. 1215 (1965). In their petition for review in this court, the executors claim a marital deduction of $107,766.98 for the commuted value of property interests which passed to decedent's surviving spouse and a charitable deduction of $55,431.55 for the commuted value of the charitable remainder.

I

*Marital Deduction*

■■ Petitioners' claim to an estate tax marital deduction is based upon sections 2056(a) and (b) of the Internal Revenue Code of 1954. The former allows as a marital deduction from the value of decedent's gross estate "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse." However, interests that are terminable do not qualify for the deduction, presumably because they are not the equivalent of interests owned outright by a surviving spouse in a community-property state.[4] The terminable interest rule is, therefore, an exception to the marital deduction; it requires disallowance where the interest passing to a surviving

spouse terminates or fails "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur." Int. Rev. Code § 2056(b) (1). Since Mrs. Schildkraut's interest in the $300,000 trust fund clearly terminated upon her death, petitioners rely upon an exception to the exception. This is contained in Int. Rev. Code § 2056(b) (5), which qualifies a terminable interest for the marital deduction if it is a life estate with a power of appointment in the surviving spouse. This section provides:

In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.

said *Golda Perl Dickerson Schildkraut* be paid each year to *The Schildkraut Foundation, Inc.*, 35 West 35th Street, New York City, New York, a charitable corporation established under the laws of the State of New York. Upon the death of my wife, *Golda Perl Dickerson Schildkraut*, the remaining principal of said trust fund and accumulated income remaining in the hands of the Trustees, I direct be distributed to *The Schildkraut Foundation, Inc.*, to devote the said sums

to the charitable objects and purposes of the said corporation.

3. There were other issues before the Tax Court; we confine our summary of the facts and proceedings to what is relevant to this petition.

4. That the purpose of the marital deduction was to equalize estate tax treatment for married persons residing in community-property and in common-law states, see United States v. Stapf, 375 U.S. 118, 128, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963).

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

Thus, an interest in property that is terminable on the death of a surviving spouse will nevertheless qualify for the deduction if the spouse "is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof," and has the power to appoint the entire interest or such specific portion. It is the "specific portion" concept that concerns us here.

Petitioners argue that with respect to a "specific portion" of the trust, a life estate with power of appointment did indeed pass to the widow. The claimed "specific portion" is composed of three elements: a sum equal to the difference between the $12,000 required to be paid annually to the widow and the assumed lesser annual income of the trust ("item 1"); a sum sufficient to pay federal and state income taxes on payments from the trust to the widow ("item 2"); and a sum sufficient to pay the annual real estate taxes on the Florida property ("item 3"). Petitioners claim that these sums can be accurately computed by making various reasonable assumptions as of decedent's death; e. g., the trust will earn interest at 3½ per cent per year; income taxes are based on 1959 rates for a single person having one exemption

and taking the standard deduction; the widow's life expectancy is 26.11 years. On this basis, petitioners have made detailed calculations showing the sums for the three items to be, respectively, $107,-861.46, $38,639.48, and $29,112.65, for a total of $175,613.59. The commuted value of this total using the federal estate tax regulations, according to petitioners,[5] is $107,766.98; this is the marital deduction claimed.

These basic assumptions are attacked by respondent. Thus, he rejects the 3½ per cent interest estimate, arguing that it cannot be said that the trust will not earn 11+ per cent per year. If the trust did earn that sum, there would be no need for invasion for the widow's benefit, and item 1 above would disappear. Similarly, he argues that it is faulty to assume that federal income tax rates in effect in 1959 will remain the same. This affects the computation of item 2. Also, respondent characterizes as without basis the assumptions that the widow will retain the Florida real estate for 26.11 years and that taxes on that property will remain the same; this affects item 3.

A Treasury regulation requires the "specific portion," referred to in section 2056(b) (5), to "constitute a fractional or percentile share of a property interest."[6] In Gelb v. Commissioner of Internal Revenue, 298 F.2d 544, 549 (2d Cir. 1962), we pointed out that prior to the 1954 Code, unless all of a trust qualified for a marital deduction,

---

5. Petitioners claim to use Table I, Treas. Reg. § 20.2031-7(f) (1958).

6. The regulation, § 20.2056(b)-5(c) (1958), provides:

*Definition of "specific portion."*
A partial interest in property is not treated as a specific portion of the entire interest unless the rights of the surviving spouse in income and as to the power constitute a fractional or percentile share of a property interest so that such interest or share in the surviving spouse reflects its proportionate share of the increment or decline in the whole of the property interest to which the income rights and the power relate. Thus, if the right of the spouse to income and the power extend to one-half

or a specified percentage of the property, or the equivalent, the interest is considered as a specific portion. On the other hand, if the annual income of the spouse is limited to a specific sum, or if she has a power to appoint only a specific sum out of a larger fund, the interest is not a deductible interest. Even though the rights in the surviving spouse may not be expressed in terms of a definite fraction or percentage, a deduction may be allowable if it is shown that the effect of local law is to give the spouse rights which are identical to those she would have acquired if the size of the share had been expressed in terms of a definite fraction or percentage. * * *

no part of it would, and that the 1954 Code introduced a new concept—the qualifying "specific portion." Construing the provision as a liberalization of prior law, we disapproved the regulation and held that the "specific portion" may be a dollar amount and even one determined by actuarial calculation of life expectancy. Yet, reliance on *Gelb* is not sufficient for petitioners here. In that case, in sharp contrast to this, Gelb's widow had a general power of appointment over the corpus of the trust. Petitioners argue that this deficiency is met here by the widow's power to consume the corpus of the trust in items 1, 2 and 3, and it is true that, depending upon the accuracy of the assumptions already referred to, a substantial portion of the corpus may be paid out to the widow from the trust. However, those whose power is only to stand and wait for a monthly stipend do not thereby have a power of appointment. Moreover, if Mrs. Schildkraut were to die tomorrow, none of the amounts predicted as future invasions would be taxable in her estate, see Int. Rev. Code § 2041(b) (1) (A), a consideration which may not be decisive but is highly significant. "Thus the marital deduction is generally restricted to the transfer of property interests that will be includible in the surviving spouse's gross estate." United States v. Stapf, 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963) (footnote omitted). But cf. Note, Powers to Consume and the Marital Deduction, 39 N.Y. U.L.Rev. 504 (1964). Moreover, we agree with the Tax Court that even if power to direct invasion of the corpus were considered to be in the widow—a most questionable assumption—the power would still not be a qualifying power of appointment. Estate of May v. Commissioner of Internal Revenue, 283 F.2d 853 (2d Cir. 1960), cert. denied, 366 U.S. 903, 81 S.Ct. 1045, 6 L.Ed.2d 202 (1961); United States v. Lincoln Rochester Trust Co., 297 F.2d 891 (2d Cir.), cert. denied, 369 U.S. 887, 82 S.Ct. 1160, 8 L.Ed.2d

287 (1962). But see In the Matter of the Estate of Baker, 32 Misc.2d 762, 228 N.Y.S.2d 588 (Surr.Ct.1961). Petitioners cite Citizens Nat'l Bank of Evansville v. United States, 359 F.2d 817 (7th Cir. 1966) (2–1), but that case is not apposite because the widow there had a general power of appointment over the corpus of the trust.[7] See also Northeastern Pa. Nat'l Bank & Trust Co. v. United States, 363 F.2d 476 (3d Cir. 1966) (en banc) (5–3), relied on by respondent. Because Mrs. Schildkraut has no power of appointment, the Tax Court here denied the marital deduction. We hold that this conclusion was correct.

## II

### *Charitable Deduction*

Petitioners claim that they are entitled to a charitable deduction of $55,431.55 for the commuted value of the charitable remainder to the Foundation. Int.Rev. Code § 2055(a) provides that, for the purpose of the estate tax, "the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers" to bona fide charitable organizations. Petitioners arrive at their claimed figure by subtracting the uncommuted value they ascribed to the "invasions" for the widow's benefit ($175,613.59) from the trust corpus ($300,000). This leaves a difference of $124,386.41, which petitioners commute to a present value of $55,431.55. Respondent argues that no charitable deduction is warranted since there is a real possibility that the Foundation will get nothing; petitioners reply that respondent is taking inconsistent positions. Cf. 1B Moore, Federal Practice ¶ 0.405[8] (2d ed. 1965); Note, The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings, 59 Harv.L. Rev. 1132 (1946).

There is considerable force to petitioners' complaint. In opposing the charitable deduction, respondent accepts peti-

---

7. This is also true of Nettz v. Phillips, 202 F.Supp. 270 (S.D.Iowa 1962), cited to us by petitioners.

tioners' assumption that the trust will earn only 3½ per cent income; if Mrs. Schildkraut lived to be 84 (eleven years past her claimed actuarial life expectancy), she would then consume the trust corpus by the yearly invasions required to pay her $12,000 annually, leaving nothing for the Foundation. However, in contesting the marital deduction, respondent emphasizes that the trust may earn 11+ per cent per year, which would make such a trust invasion unnecessary. If this is so, then, of course, petitioners' estimate of what will ultimately go to the Foundation is extremely conservative, since this projected invasion (item 1 above) is by far the largest assumed depletion of the trust corpus. This sort of whipsawing of a taxpayer is hardly appealing; however, the issue still must be whether the charitable deduction is permitted under the applicable law.

Respondent relies principally upon Commissioner of Internal Revenue v. Estate of Sternberger, 348 U.S. 187, 75 S. Ct. 229, 99 L.Ed. 246 (1955), and Bankers Trust Co. v. United States, 299 F.2d 936 (2d Cir. 1962), affirming per curiam 190 F.Supp. 671 (S.D.N.Y.1960) and 191 F.Supp. 792 (S.D.N.Y.1961), cert denied, 371 U.S. 814 (1962). In *Sternberger,* the issue was whether a deduction would be allowed for a charitable bequest that would take effect only if decedent's childless, unmarried, 27-year-old daughter died without descendants surviving her and her mother. The executor conceded that the chance the charity would not take was much more than negligible. 348 U.S. at 194, 75 S. Ct. 229. It did claim, however, that the various contingencies involved could be actuarially analyzed so that some estimate of the worth of the charity's remainder interest could be reasonably made. The Court stated (348 U.S. at 197–198, 75 S.Ct. at 234–235):

> If respondent is successful, it means the allowance of an immediate and irrevocable deduction of over $175,000 from the gross estate of decedent, although respondent admits there is a real possibility that charity will re-

ceive nothing. The bequest, in fact, offers to the daughter an inducement of about $2,000,000 to remarry and leave a descendant. To the extent that this inducement reduces the actuarially computed average probability that charity will receive this bequest, it further demonstrates the inappropriateness of authorizing charitable tax deductions based upon highly conditional bequests to charity.

An even clearer illustration of the effect of respondent's interpretation of the code readily suggests itself. If decedent had here conditioned his bequest to charity solely on the death of his daughter before remarriage, the Remarriage Table would then fix the present value of the charitable remainder at .18384 on the dollar. The taxpayer would at once receive a substantial charitable deduction on that basis. The daughter, however, would have a $2,000,000 inducement to remarry. If she did so, her action would cancel the possibility that charity would receive anything from the bequest, but it would not cancel the tax deduction already allowed to the estate. To whatever extent any person can defeat the fulfillment of any condition upon which a benefit to charity depends, to that extent the actuarial estimate that such benefit will reach charity is less dependable. The allowance of such a tax reduction as is here sought would open a door to easy abuse. The result might well be not so much to encourage gifts inuring to the benefit of charity as to encourage the writing of conditions into bequests which would assure charitable tax deductions without assuring benefits to charity.

Thus, in a case where an ordinary and highly common set of events (marriage and having a child with a normal lifespan), made all the more probable by a $2,000,000 inducement, could cut off the charity entirely, the Supreme Court held it would be inappropriate to allow a charitable deduction. The present stricture on improbable bequests relied on by re-

spondent, Treas. Reg. § 20.2055–2(b) (1958), provides in relevant part:

*Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.

Respondent argues that because Mrs. Schildkraut may survive her actuarial life expectancy by eleven years, the possibility that the Foundation will take nothing here is not "so remote as to be negligible."

We think that the applicable authorities do not require disallowance of the claimed charitable deduction here. First, in *Sternberger*, the life tenant was given a volitional power and a strong incentive to defeat the charitable interest. The situation was similar in Bankers Trust Co., in which the charitable bequest would fail if a 47-year-old married woman gave birth for the first time; this court affirmed the district court's denial of the deduction. In this case, however, Mrs. Schildkraut has no significant power, combined with incentive, to diminish the expectancy of the Foundation, since she has nothing to do with the fixing of the amounts comprising items 1, 2 and 3; the only conceivable action she could take to diminish the trust corpus and, therefore, the sum ultimately vesting in the Foundation is to move to a state where there is an income tax, assuming she lived in a state with a lower income tax or none at all. That would hardly be occasioned solely by the trust's payment of such a tax, although the move might thereby be made more attractive. Of course, it could be argued that the widow's survival is volitional in the sense that a life can be cut short voluntarily. Such a characterization would not only be "preposterous," see United States v. Dean, 224 F.2d 26, 28 (1st Cir. 1955), but irrelevant, since no one can choose to live past a certain date, the only contingency that would diminish the Foundation's expectancy. See 55 Colum.L.Rev. 924, 926 (1955). Second, this is not a case where defeat of the charitable interest would be unfair to the government because "it would not cancel the tax deduction already allowed to the estate." Commissioner of Internal Revenue v. Estate of Sternberger, 348 U.S. 187, 198, 75 S.Ct. 229, 235, 99 L.Ed. 246 (1955). In Sternberger, defeat of the charitable interest meant that the bequest would go to the daughter's descendants instead; similarly, *in Bankers Trust Co.*, the bequest would go to the issue of decedent's secretary. In both, to the extent that a charitable deduction was allowed, the estate tax ordinarily payable on the bequest to the daughter's descendants (*Sternberger*) or the issue (*Bankers Trust*) would be irretrievably lost. Here, if the charity takes nothing, it can only be because the entire corpus is paid out to the widow, and a direct bequest to her would qualify for the marital deduction; therefore, in principle no otherwise proper tax on a direct bequest would be lost. There is no chance of "easy abuse," see Sternberger, 348 U.S. at 198, 75 S.Ct. 229, when defeat of the charitable interest occurs only if the widow takes all the

corpus and the latter amounts to less than one-half of the adjusted gross estate.[8]

■ Therefore, *Sternberger* and *Bankers Trust Co.* do not require disallowance of the entire charitable deduction here; nor does an examination of other relevant Supreme Court cases lead us to that result. A dual strain runs through them: a charitable deduction will be denied where the expectancy of the charity can be controlled or substantially affected by the volitional act of the life tenant or where a standard for invasion that might diminish the corpus going to a charity is not objectively fixed. Thus, deductions were denied in Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Merchants Nat'l Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); and Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667 (1928), but allowed in United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934), and Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). In *Henslee,* the Court pointed out that the will did not limit invasions to conformity with some ready standard since the income to be paid to decedent's mother was "to be used by her as she sees fit," and the trustee's power to invade was for the mother's "pleasure, comfort and welfare"; the Court emphasized that there was a chance that the mother "would abandon her customary frugality and squander her son's wealth." 335 U.S. at 599, 69 S.Ct. at 292. In Merchants Nat'l Bank, invasion was allowed for the "comfort, support, maintenance, and/or happiness" of decedent's wife; the Court held that this was not "a fixed standard based on the widow's prior way of life." 320 U.S. at 261, 64 S.Ct. at 112. In *Humes,*

the charitable bequest would be defeated if a 15-year-old niece had a child before the age of 40; the niece could clearly affect the probability of this occurrence. On the other hand, in Provident Trust Co., a daughter could no longer choose to have issue—the event which would defeat a charitable bequest—because an operation had made this "plainly impossible." 291 U.S. at 286, 54 S.Ct. 389. In Ithaca Trust Co., the Court emphasized that the standard for invasion ("to suitably maintain * * * [the widow] in as much comfort as she now enjoys") was "fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion." 279 U.S. at 154, 49 S.Ct. at 291.[9] See also Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954); Lincoln Rochester Trust Co. v. Commissioner of Internal Revenue, 181 F.2d 424 (2d Cir. 1950).

For reasons already made plain, there is no significant volitional power in Mrs. Schildkraut to defeat the Foundation's expectancy. Moreover, the standards for invasion here are "fixed in fact and capable of being stated in definite terms of money." There is nothing vague or subjective about a command to make up the difference between actual income and $12,000 a year, or to pay defined taxes. We realize that this does not end the matter; a charitable bequest dependent upon the sun falling in the ocean could not be defeated by human volition, but would not be deductible either.

The key assumption in assessing probabilities is that the trust income will be 3½ per cent. Petitioners suggest this rate on the assumption that the marital deduction is allowed, and it would be unfair to hold them to it for that reason alone. In attacking the marital deduction, respondent exhibited extraordinary

8. Even if the entire $300,000 in the trust were left to the widow, the maximum possible marital deduction would not be exceeded. The estate is allowed a marital deduction of up to 50% of the value of the adjusted gross estate, Int.Rev.Code § 2056(c) (1), and the only other marital deduction allowed to this estate has been

$103,365.47. See 24 CCH Tax Ct.Mem. at 1217.

9. The Court also noted that the income of the estate at the testator's death was more than sufficient to maintain the widow as required, which made invasion unlikely.

optimism about the trust's earning capacity, envisioning a possible rate of over eleven per cent. If respondent were held to that prediction, the probable invasion of the corpus would be quite small and the chance that Mrs. Schildkraut would exhaust the corpus extremely remote. Moreover, it would not be necessary to go that far; even a shift in assumed earnings rate from 3½ to four per cent would materially affect the assumed amount going to the Foundation. A rate of four per cent might be justified by various factors, including the following: in this circuit, it was held in 1959–1960 that triers of fact in personal injury cases should be instructed to use a minimum discount rate of four per cent in computing the present value of money to be earned in the future;[10] and in other contexts, although respondent now employs an interest rate of 3½ per cent, at least for purposes of determining present value of money to be received in the future,[11] he has employed at other times an interest rate of four per cent.[12] However, we are willing to accept the 3½ per cent earnings assumption in assessing probabilities as of September 1959, although we might question its use for periods commencing at times when such a rate would obviously be unrealistic.

Using a 3½ per cent rate, respondent points to the possibility that Mrs. Schildkraut may live long enough (to age 84, twelve years past her life expectancy) for the annual invasions necessary with this low income rate to wipe out the trust corpus; relying on the first sentence of Tres.Reg. § 20.2055–2(b) (1958), respondent argues that this possibility is not "so remote as to be negligible." However, we do not agree that the test there stated controls this case. This is not an "either-or" situation in which the happening of an event, whose probability has to be ascertained, wipes out a charitable interest entirely. Rather, this is a case with a series of non-volitional possibilities of corpus invasion, e. g., surviving to age 72, to age 73, etc., each of which tends to diminish, but does not eliminate, the charitable remainder. As we have already said, we do not read the Supreme Court decisions as requiring use in these circumstances of the "so remote as to be negligible'" test at all. There is a contrary precedent, where the key question was whether survival past life expectancy would wipe out a trust corpus, see Estate of Moffett v. Commissioner of Internal Revenue, 269 F.2d 738 (4th Cir. 1959), but we think the result reached there was required neither by precedent nor policy. See 54 Mich.L. Rev. 433 (1956). But cf. United States v. Dean, 224 F.2d 26 (1st Cir. 1955) (either-or situation; court reluctantly denied deduction). We feel that the proper test here is whether there is an interest that is "presently ascertainable," see Treas. Reg. § 20.2055–2(a) (1958),[13] and "assurance," see Sternberger, 348 U.S. at 199, 75 S.Ct. 229, that the Foundation will receive it.

10. Conte v. Flota Mercante del Estado, 277 F.2d 664, 670 (2d Cir. 1960) ; Alexander v. Nash-Kelvinator Corp., 271 F. 2d 524, 527 (2d Cir. 1959).

11. Treas.Reg. § 20.2031-7(f) (1958).

12. See Simpson v. United States, 252 U.S. 547, 40 S.Ct. 367, 64 L.Ed. 709 (1920) ; Treas.Reg. 105, § 81.10(j) (1952) ; Campbell, Valuation of Life Estates and Remainders, in Proceedings of New York University Eleventh Annual Institute on Federal Taxation 633 (1953).

13. Treas.Reg. § 20.2055-2(a) (1958) provides:
   Remainders and similar interests. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the non-charitable interest. The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in § 20.2031-7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. * * *

Applying this standard, there is here "no uncertainty appreciably greater than the general uncertainty that attends human affairs." Ithaca Trust Co. v. United States, 279 U.S. at 154, 49 S.Ct. at 291. Use of a life expectancy for Mrs. Schildkraut of 26.11 years, based purely on actuarial computation, is justifiable, at least in the absence of objection to the accuracy of the table used or evidence that in this particular case actual life expectancy would be materially different. Cf. Hall v. United States, 353 F.2d 500 (7th Cir. 1965), 66 Colum.L.Rev. 797 (1966) (rejecting Commissioner's contention that valuation of reversionary interest for purpose of estate taxation may not be based upon evidence of actual life expectancy as opposed to use of standard tables). Respondent also attacks petitioners' assumption that the 1959 income tax and the Florida real estate tax rates will remain constant. (Actually, respondent's argument, to be relevant here, questions the assumption that tax rates will not go up; if tax rates go down, invasions are less and the Foundation receives more.) Respondent apparently goes along with petitioners' assumption (made for marital deduction purposes) that the widow will keep the Florida property throughout her life. While tax rates may not be as certain as taxes, this court has recognized that tax rates are stable enough to furnish a basis for predictions in personal injury cases, e. g., LeRoy v. Sabena Belgian World Airlines, 344 F.2d 266, 276 (2d Cir.), cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965) (damages for wrongful death). It is equally sound to use here federal and state tax rates prevailing as of the date of decedent's death. Respondent also argues that petitioners do not take into account the possibility of state income taxes. The state income tax rate to use should be that of the state that could properly tax Mrs. Schildkraut's income as of the date of decedent's death. Cf. Estate of Brooks v.

Commissioner of Internal Revenue, 250 F.2d 937 (3d Cir. 1958). Petitioners claim that Florida is that state and that Florida not only has no income tax but also has a constitutional provision prohibiting such a tax.[14] Be that as it may, we see no reason why it is not fair to both respondent and the taxpayer to focus only on the facts as of decedent's death on this issue as on others; e. g., the widow is assumed to keep the Florida property for her lifetime, although she might sell it (this, of course, would increase the corpus to be left to the Foundation by decreasing the real estate taxes).

Viewing the uncertainties just enumerated, we find the charitable deduction to be justified. We realize that the tax laws at times create a never-never land; e. g., a business that loses money thereby acquires a valuable tax loss; a taxpayer can make money by giving away property to charity rather than by selling it.[15] But it is not necessary to ignore reality in administering the tax laws. Each of the assumptions just made is reasonable and is frequently applied in other areas of the law. Moreover, a crucial fact here certainly is that the entire corpus must go in whole or in part either to the widow or to the Foundation, both tax-free recipients if the corpus were bequeathed to them directly. Accordingly, we reverse the Tax Court and direct allowance of a charitable deduction in an amount to be determined in accordance with this opinion after such further proceedings, if any, as the Tax Court may allow to determine issues which we have not decided, e. g., the residence of the widow at the time of decedent's death.

The petition is denied as to the marital deduction; as to the charitable deduction, the decision of the Tax Court is reversed.

FRIENDLY, Circuit Judge, concurs in the result.

---

14. See Fla.Const. art. IX, § 11, F.S.A.

15. See Surrey & Warren, Federal Income Taxation 322 n. * (1962) (example under then applicable rates).