In re ESTATE of Harry B. McCOY, Jr., Deceased.

Norfleet R. TURNER and Frank Wilbourn, Jr., Executors, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 74–1582.

United States Court of Appeals, Sixth Circuit.

March 4, 1975.

Thomas F. Turley, U. S. Atty., Memphis, Tenn., Scott P. Crampton, Meyer Rothwacks, Ernest J. Brown, Loring Post, William Estabrook, III, Gilbert E. Andrews, Joseph McManus, U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Walter P. Armstrong, Jr., Joseph B. Walker, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, John J. Doggett, Jr., Memphis, Tenn., for plaintiffs-appellees.

Before PHILLIPS, Chief Circuit Judge, and WEICK and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

The Government appeals from a District Court order that estate taxes and interest in the sum of $122,605.71 be refunded to the Estate of Harry B. McCoy, Jr. The question presented is whether the value of a charitable gift in remainder could be definitely ascertained as of the date of testator's death, so that his estate should be allowed a deduction therefor under § 2055 of the Internal Revenue Code, 26 U.S.C. § 2055 (1967).

Harry B. McCoy, Jr., died on December 7, 1966, leaving a will which was duly probated in the Probate Court of Shelby County, Tennessee on December 16, 1966. By his will McCoy provided that, after the payment of debts and certain specific bequests, the entire residue of his estate was bequeathed to a trust for the following purposes:

A. During their lifetime, the trustee shall pay to the following persons in monthly installments the following sums:

(1) Provided he has been in my employ within two months prior to my death, Will Townsell shall receive Four Hundred ($400.00) Dollars per month.

(2) Ruth Smythe Graham shall receive Four Hundred ($400.00) Dollars per month.

(3) Sarah Bell Jones shall receive Two Hundred ($200.00) Dollars per month.

Each bequest is contingent upon the recipient surviving me, and at the death of each recipient his or her monthly payment shall cease and shall be added to the income to be distributed in Paragraph B following.

*In the event of extreme need by Will Townsell for additional funds, for health reasons or otherwise,* the trustee in its sole discretion may encroach upon as much of the principal as it deems necessary for this purpose and shall pay to or apply directly for his benefit.

B. It is my desire that this trust be known as the McCoy Foundation, established in memory of Mr. and Mrs. Harry B. McCoy. It is to be established for the promotion and furthering of cultural development in the Memphis area. Not limiting my trustee in any way, but for the purpose only of conveying my preference, it is my hope that primary interest will be focused upon developments in the theatre. (Emphasis added)

In addition, the will gave the trustee discretionary power to terminate the trust, or any share thereof, at any time, "if the amount thereof does not warrant the cost of continuing said trust, or its administration would otherwise be impractical." In such event, the trustee was directed to pay the principal and any undistributed income "to the person or persons entitled at that time to the

income therefrom in the proportions in which they were then entitled to receive the income, and upon such termination the rights of all other persons who might otherwise have an interest as succeeding life tenant or in remainder shall cease."

The executors and trustee filed a Bill for Construction and a Declaration of Trust with the Chancery Court of Shelby County, Tennessee. The Declaration of Trust provided that section A would be funded with assets sufficient to produce annual income of $12,000 (the total amount of the trust payments to be received by the three income beneficiaries), plus administration costs, with the balance of the estate's assets going to create the McCoy Foundation. The Declaration of Trust stipulated that in the event of invasion on Townsell's behalf, "said encroachment shall not serve to reduce the payments to the remaining life beneficiaries, and following said encroachment the monthly payments to Will Townsell shall be reduced proportionally to effect this result."

In a final decree entered on December 7, 1970, the Chancellor held:

" . . . The trust created by said Will is (with the exception of the value of the life estate) a valid charitable trust within the meaning of the laws of Tennessee, defining a charitable trust . . . "

In a letter dated March 26, 1971, the District Director of Internal Revenue, Atlanta, Georgia, determined that the McCoy Foundation qualified as a charity under the provisions of Sections 2055, 2106 and 2522 of the Internal Revenue Code.

The executors filed an Estate Tax Return claiming the entire corpus of the trust established by sections A and B, minus the present value of the life estates, as a charitable bequest. The Commissioner disallowed this bequest, thus increasing the taxable estate by $327,-233.18. The disallowance was based on Reg.Sec. 20.2055–2, 26 C.F.R. § 20–2055–2 (1973), which forbids deductions for interests not "presently ascertainable". The Government assessed additional taxes and interest in the amount of $122,605.71. The estate paid the assessed amount and filed for a refund. After six months had elapsed following the filing of the claim, the estate initiated an action in District Court to recover the disputed taxes.

On cross-motions for summary judgment, the District Court determined that

"the power to encroach given to the trustee 'in the event of extreme need by Will Townsell for additional funds, for health reasons or otherwise' does not defeat this charitable exemption, as 'extreme need' is an ascertainable standard. These words modify and therefore limit the words 'for health reasons or otherwise'; the trustee must make an objective finding of extreme need, from whatever cause, before he can encroach. This presents an entirely different situation, for example, from Loyd v. United States, 319 F.Supp. 237 (W.D.Tenn.1970) aff'd 443 F.2d 1179 (C.A.6, 1971), where the trustee was authorized to encroach 'whenever and to the extent it deems necessary or proper for her maintenance, support, welfare, enjoyment and pleasure and in reaching such determination the trustee shall be generous and liberal.' The standard of 'need' has been held to be an ascertainable standard; much more so is 'extreme need.' Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (C.A.2, 1954)." In re Estate of McCoy, 374 F.Supp. 1321 (W.D.Tenn. Feb. 14, 1974).

The District Court also concluded that the provision authorizing the trustee to terminate the trust presented an "ascertainable standard, requiring an objective finding on the part of the trustee", the trustee being required in the event of such termination to pay the remaining assets to "non-profit cultural institutions". The District Court allowed the claimed deduction and ordered the disputed taxes refunded. From that determination the Government appeals.

Section 2055 and the regulations thereunder allow a deduction from a deced-

ent's gross estate of the presently ascertainable value of a bequest to a charitable organization. Treasury Regulation § 20.2055–2, 26 C.F.R. § 2055–2 (1973), titled *"Transfers not exclusively for charitable purposes"*, states that "if a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest."

█ In a case such as this, a Court must employ a two-step analysis, First, the Court must determine if the language of the will or trust conditions invasion of the corpus on a "presently ascertainable" standard so that "the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. . . . " Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943).

If a presently ascertainable standard is present, the Court must determine the value of the amount which will eventually go to charity and allow a charitable deduction therefor. Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954).

█ To be "presently ascertainable" a bequest to charity must not allow for invasion of the corpus of a trust unless the amount which possibly can be diverted from charity is defined by a standard that is "fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929). In *Ithaca* the Court sustained a deduction although the bequest allowed invasion "to suitably maintain her [the life beneficiary] in as much comfort as she now enjoys."

In Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943), the standard for invasion was not fixed, but was susceptible of broad, almost unbounded interpretation by the trustee administering the bequest. The testator in *Merchants* authorized the trustee to invade the corpus of the trust to provide "for the comfort, support, maintenance, and/or happiness of my said wife." *See also* Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949), rehearing denied, 336 U.S. 915, 69 S.Ct. 601, 93 L.Ed. 1078 (1949), where the trustees were authorized "to use and expend in their discretion any portion of my estate, either income or principal, for the pleasure, comfort and welfare of my mother."

█ In the instant case, the language is "extreme need . . ., for health reasons or otherwise." While this phrase is not within the express reach of *Ithaca,* we agree with other circuits that it is within the ambit of *Ithaca.*

"Need" has been held to be an acceptable standard under section 2055. Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2nd Cir. 1954). The Third Circuit said concerning need, Funk v. Commissioner of Internal Revenue, 185 F.2d 127, 131 (3d Cir. 1950):

> The term "needs" is not, of course, one the content of which can be defined precisely . . .

> While obviously it must include the essentials of life, it has been construed in New Jersey to mean that which is reasonably necessary to maintain a beneficiary's station in life. It is not indicative of an unqualified gift, nor is it dependent upon the fancy of the administrator. Thus, its use confined the trustee to limits objectively determinable. [footnotes omitted]

*See also* Peoples Trust Co. of Bergen County v. United States, 311 F.Supp. 1197 (D.N.J., 1970), aff'd 444 F.2d 193 (3d Cir. 1971).

If "needs" means "that which is reasonably necessary to maintain" a standard of living, then "extreme need" means that which is absolutely essential to maintain a beneficiary's standard of

living.[1] "Extreme need" is, thus, an even stricter standard than "need" and allows ready ascertainment of the potential invasion of trust corpus for the life beneficiary.

The government urges that the "or otherwise" language in the trust instrument before us allows the trustee unbridled leeway. A review of the instant language, "extreme need . . ., for health reasons or otherwise," however, shows that the words questioned by the Government are part of a clause which modifies "extreme need."

The complete phrase, "for health reasons or otherwise," merely provides insight into the type of situation which testator felt would warrant invasion. "Or otherwise" indicates that testator was leaving the actual determination of the circumstances which would place Townsell in "extreme need" solely in the trustee's hands.

Having concluded that a "presently ascertainable" standard for determining invasion of the corpus is present, we turn to the second stage of the analysis.

■■ To the extent of possible invasion, a deduction for estate tax purposes cannot be allowed because funds subject to invasion may be expended for private rather than charitable purposes. United States v. Commercial National Bank of Kansas City, 404 F.2d 927 (10th Cir. 1968) cert. denied, 393 U.S. 1000, 89 S.Ct. 487, 21 L.Ed.2d 465 (1968). Where a broad or narrow reading of the phrase authorizing invasion of the corpus for non-charitable purposes is possible, the broad standard should be applied to assure that a deduction is not given for funds which may go to private use. State Street Bank & Trust Co. v. United States, 313 F.2d 29 (1st Cir. 1963).

■ The District Court failed to note that it had engaged in this stage of the analysis in reaching its decision. The Court did, however, conclude that an estate tax deduction should be allowed for the entire corpus of the trust. Implicit in that conclusion is a determination that the corpus will not be invaded. The District Court had in its possession affidavits from Will Townsell and others indicating that Townsell was seventy-two years old at the time of testator's death, that Townsell was frugal, that he had no outstanding debts other than car payments, that he was in good health and was facing no extreme emergencies necessitating additional funds. These facts support the District Court's determination that the prospect of invasion of corpus is so unlikely as to be negligible. This being the case, the District Court correctly determined that the entire trust corpus would go to charitable rather than private purposes and properly allowed a deduction for the entire amount.

The District Court's judgment is affirmed.

---

1. Black's Law Dictionary—(4th ed. 1951) defines "extreme" to mean ". . . greatest, highest, strongest, or the like."