**ESTATE of Bart COTTER, Deceased, National Bank of Detroit, a National Banking Association, Executor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 36545.**

United States District Court,
E. D. Michigan, S. D.

Dec. 13, 1977.

J. Bruce Donaldson, Chirco, Donaldson, Herrinton & Runstadler, Detroit, Mich., for plaintiff.

James K. Robinson, U. S. Atty. by Michele C. Mayes, Asst. U. S. Atty., Detroit, Mich., Claire Fallon, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OPINION

THORNTON, District Judge.

This is a civil action for refund of federal estate taxes in the amount of $127,938 and

assessed interest of $22,935.95, plus statutory interest. The government has moved for summary judgment and plaintiff has moved for partial summary judgment. The positions of the respective parties have been briefed with thoroughness and oral argument has been had thereon. The underlying facts have been stipulated to by the parties.

The Testator, the terms of whose Will are at issue here, died August 27, 1964 leaving one daughter surviving him, then aged 28 (having been born October 19, 1935). Decedent's Last Will and Testament was probated in the Probate Court of Oakland County, State of Michigan. National Bank of Detroit, plaintiff herein, is the Executor of the Estate of Bart Cotter. Said Executor filed a federal estate tax return in which charitable deductions were claimed (for income interest and for corpus)[1] by reason of a certain bequest under the provisions of the Will. The District Director of Internal Revenue, upon audit of the decedent's estate tax return, disallowed the charitable deductions and assessed the estate tax deficiencies, plus interest. These deficiencies were paid and are now the subject matter of the sums sought to be refunded in this lawsuit, the claim for refund having been disallowed by the District Director of Internal Revenue.

The status of the decedent's daughter is of basic relevance to the operative language of the Will. We proceed to describe it briefly before setting forth the provisions in the Will which have triggered this controversy. On January 15, 1960 Marcia K. Cotter (then 24 years of age) entered the Discalced Nuns of the Carmelite Order (in Detroit, Michigan). This is a cloistered order wherein members enter into a closed convent, completely withdrawn from the outside world, for the purpose of devoting their lives to prayer and religious activity. Communication with the outside world is virtually non-existent. The life of the religious community is the contemplative one. There are four successive stages through which a member progresses—postulant (six months), novice (one year), simple vows (three years) and finally, solemn vows. When Bart Cotter died, August 27, 1964, his daughter had already professed simple vows of obedience, chastity and poverty (as of October 28, 1961). As of the date of decedent's death his daughter had not taken solemn vows. After decedent's death his daughter, who had taken the name in religion of Sister Mary Katherine, assigned all her property, bequeathed her entire estate and appointed all that she possessed power to appoint to the Carmelite Order. She also assigned all her "right, title and interest in the income and corpus of the trust[2]." The plaintiff herein petitioned the Probate Court for construction of the Will and for instructions, the result of which will be discussed later herein.

We now reach the pertinent provisions of the Will. It contains the usual provision for the payment of administration expenses, debts and taxes and then divides the residue into two parts. One part passes outright and the other is left in trust. The following is excerpted from the Will and sets forth the trust provisions with which we are here concerned:

IV.

I direct my Executor to select cash or assets from my estate which are equivalent to one-half (½) of the rest, residue and remainder of my estate, valued as of a date to be selected by my Executor between the date of my death and the date of distribution which is most advantageous to the Trust set up under this paragraph. If said one-half (½) of the residue so valued shall be less than $300,-000.00 then the amount selected by my Executor and placed in this Trust shall be not less than $300,000.00, valued at the date to be selected by my Executor. I give such one-half (½) of my residuary estate or $300,000.00 so selected, whichever is greater, to NATIONAL BANK OF DETROIT, a national banking association, to be held in Trust, subject to the following conditions:

1. Stipulation, p. 3, par. 6.

2. Provided for in the Will of Bart Cotter.

1. (a) One-half (½) of the net income from this Trust shall be payable to my daughter Marcia K. Cotter at convenient intervals, not less than quarterly, until her sixtieth (60th) birthday.

(b) My Trustee shall, if required, pay over to or for the benefit of my said daughter, Marcia K. Cotter, such sums in addition to the aforesaid one-half (½) of the net income, as my Trustee shall determine to be necessary for her care, comfort, support or welfare, until her sixtieth (60th) birthday.

(c) The balance of the net income shall be payable to the Roman Catholic Carmelite Convent at 16636 Wyoming, Detroit 21, Michigan to be devoted to a foundation for masses for and in the name of the family of Bart Cotter, this Testator.

2. My Trustee shall distribute to the corpus of the Trust as follows:

(a) Twenty-five per cent (25%) thereof to Marcia K. Cotter at her fiftieth (50th) birthday.

(b) Twenty-five per cent (25%) thereof to Marcia K. Cotter at her fifty-fifth (55th) birthday.

(c) Twenty-five per cent (25%) thereof to Marcia K. Cotter at her sixtieth (60th) birthday.

(d) At the sixtieth (60th) birthday of Marcia K. Cotter the remaining twenty-five per cent (25%) shall be paid over to the Roman Catholic Carmelite Convent at 16636 Wyoming, Detroit as a perpetual fund or foundation for masses for and in the name of the family of Bart Cotter, this Testator and this Trust shall thereupon terminate.

3. If my said daughter shall die before reaching her sixtieth birthday, the Trust above provided for shall terminate, and thereupon the remaining corpus and any accumulated income of the Trust shall be paid over to such persons or charities as my daughter, Marcia E. Cotter, shall appoint by her Last Will and Testament. It is my intention that this power of appointment by Will conferred upon her shall be exercised by any Will which she shall make in the future or shall have made in the past and that such Will of hers shall not be required to refer to this power of appointment or to this Will and that any general residuary clause in her Will or the equivalent thereof shall be sufficient to exercise the power herein granted.

On June 1, 1966 the Probate Court (as a result of the petition for construction and instructions) [3] determined that said assignment was ineffective and that the Trust could not be prematurely terminated. The Court said:

It was obvious that the deceased had carefully considered the various provisions of his Will and was fully aware that his daughter at the time had taken her vows and was a member of a particular Catholic order. A study of the will shows that Testator thoughtfully worked out a logical plan for utilization of both time and money so that a competent trustee could exercise his discretion for the benefit of the daughter in the light of circumstances at particular times in the future. Testator's intention was lawful, was clearly delineated, and the Court has a duty to carry out the will of the deceased. The termination of the trust at this time would be premature and contrary to the expressed intent of the Testator.

The Court instructs the Executor to carry out the provisions of paragraph four and arrange for the appointment and qualification of the Trustee, and directs the Trustee, when qualified, to carry out the administration of the Trust in accordance with the terms of the Will.

---

**3.** The petition had asked for a determination whether the plaintiff might recognize the assignment previously made by Sister Mary Katherine and pay over to the Discalced Carmelite Nuns the income and corpus under the Will, on the theory of a legal merger resulting from the assignment.

The ultimate question here is whether either or both of the estate tax charitable deductions[4] (one for income and the other for corpus) are legally allowable. Section 2055 of the Internal Revenue Code of 1954 (26 U.S.C. § 2055) is the yardstick/criterion for legal allowability. Treasury Regulation § 20.2055–2 provides that:

> If a trust is created or property is transferred for both a charitable and private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest . . . . Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible.

The Court has reviewed certain pertinent case law dealing with the instant subject matter. Two cases from this circuit appear to cover the legal principles involved. They are *In Re Estate of McCoy*, 511 F.2d 1090 (6th Cir. 1975) and *In Re Estate of McCord*, 516 F.2d 832 (6th Cir. 1975).

In *McCoy, supra,* the residue of decedent's estate was bequeathed to a trust with a provision that each of three named beneficiaries receive a monthly sum until his/her death when such payment "shall cease and shall be added to the income to be distributed in Paragraph B following" (*McCoy, supra,* 1090). Paragraph B provides that the trust be established "for the promotion and furthering of cultural development in the Memphis area." (*McCoy, supra,* 1091). There are certain other provisions not relevant to the instant issue. The Testator further specifically provided, with respect to one of the beneficiaries of the monthly sums, Will Townsell, that "in the event of extreme need by Will Townsell for additional funds, for health reasons or otherwise, the trustee in its sole discretion may encroach upon as much of the principal as it deems necessary for this purpose and shall

pay to or apply directly for his benefit." (*McCoy, supra,* 1090). The Court pointed out that pursuant to § 2055 and the regulations thereunder a deduction from a decedent's gross estate of the presently ascertainable value of a bequest to a charitable organization is allowed and that under Treasury Regulation § 2055–2 " 'if the trust is created or property is transferred for both a charitable and a private purpose deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the non-charitable interest.' " The Court went on to describe the two-step analysis that must be employed in this situation. The first step requires a determination "if the language of the will or trust conditions invasion of the corpus on a 'presently ascertainable' standard so that 'the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. . . .' " (*McCoy, supra,* 1093). The second step is taken only if it has been determined that a "presently ascertainable" standard exists. That step is to determine "the value of the amount that will eventually go to charity and allow a charitable deduction therefor." (*McCoy, supra,* 1093). "Presently ascertainable" is defined in *McCoy* by reference to *Ithaca Trust Company v. United States,* 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). The standard is one with respect to the amount divertible from the charity, by invasion of the corpus, said standard being " 'fixed in fact and capable of being stated in definite terms of money.' " (*McCoy, supra,* 1093). In *Ithaca* invasion was allowed to suitably maintain the life beneficiary "in as much comfort as she now enjoys." This was held to be a fixed standard and deductible. A second of three leading cases concerning ascertainable standards with respect to estate tax charitable remainder deductions is *Merchants National Bank v. Commissioner of Internal Revenue,* 320 U.S. 256, 64 S.Ct.

---

**4.** Defendant in its Brief, at page 10, footnote 2, states that it does not contest that the Carmel-

ite Convent is a qualifying charitable organization within the purview of § 2055.

108, 88 L.Ed. 35 (1943). In that case the trustee was allowed to invade the corpus of the trust to provide "for the comfort, support, maintenance and/or happiness of my said wife." The Supreme Court here held there was no fixed standard present by which use of the principal was restricted, hence no charitable deduction allowable. The third Supreme Court decision in this area is *Henslee v. Union Planters National Bank and Trust Co.,* 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1948). The comparable language provides for invasion of the principal of the trust (entire estate left in trust for the lifetime of Testator's 85-year-old mother), a specified sum per month, plus authority and power to use any portion of the estate, income or principal "for the pleasure, comfort and welfare of my mother." (*Henslee, supra,* 596, 69 S.Ct. 291). That language was held not to provide "a presently ascertainable standard." The three Supreme Court cases just adverted to are all cited in *McCord, supra. Ithaca* and *Merchants* are cited in *McCoy.* In *McCoy* Judge Anthony J. Celebrezze, writing for the court, held that the language "extreme need" provided an ascertainable standard, that since "need" has been held to be an ascertainable standard (see cases cited in *McCoy*) " 'extreme need' is, thus, an even stricter standard than 'need' and allows ready ascertainment of the potential invasion of trust corpus for the life beneficiary."

We turn now to the second Sixth Circuit case previously cited, *McCord.* In writing for the court Judge Wade H. McCree reviewed *Ithaca, Merchants* and *Henslee.* The opinion goes on to apply the rationale of these three cases to the fact situation present in *McCord.* The testamentary trust established by the decedent in *McCord* was for the purpose of providing for the support and care of decedent's mongoloid daughter during her lifetime, the remainder to be distributed at the daughter's death to designated charities. Under the trust agreement the trustees were permitted to invade the trust corpus if necessary "to provide the daughter with her accustomed standard of living." The payment of surplus income

(income beyond that required for the daughter's support) was permitted, to the institution of the daughter's residence or to other charities. The trustees were also empowered to terminate the trust before the daughter's death "if it should be in her best interest." With respect to the provisions relating to the distribution of surplus income and termination of the trust, the language of the will was: "it being my chief motive in establishing the within trust to attempt to guarantee the use and disposal of my trust estate at all times for the best interest of the beneficiary herein named." The Court said that

> The two issues presented in this appeal are (1) whether the provision allowing for the early termination of the trust is governed by an ascertainable standard that assures that the amount to be bequeathed to the charities can be reliably predicted, and (2) whether the will permits the trustees to pay excess income to non-charitable institutions in unascertainable amounts. [*McCord, supra,* 834.]

In referring to *Ithaca, Merchants* and *Henslee* as guidelines the Court, in *McCord,* commented that "[a]lthough there may be a legal difference between the power to terminate a trust and discretionary authority to invade its corpus for the benefit of a life beneficiary, we believe the invasion of corpus cases are sufficiently analogous to provide us with helpful insights about ascertainable standards." *McCord, supra,* 835. The Court held in *McCord* that there was not an ascertainable standard present. We, likewise, agree inversely that the rationale in *McCord,* though not dealing with an invasion of corpus problem is nevertheless applicable to an invasion of corpus problem such as we have here.

We think that the ascertainable standard as defined by the cases is not present here. There is no way to predict whether Sister Mary Katherine will in futuro (point of reference being the date of testator's death, August 27, 1964) require net income in addition to the one-half specifically provided for her "care, comfort, support and welfare." When the testator died Sister Mary Kathe-

**30**

rine was 28 years of age. Any decision that she might make from that day forward to leave the convent is 100% subjective, involving volition. In *McCord, supra,* the Court quoted from *Henslee* as follows: " 'What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance.' " *McCord, supra,* 835–836. The trustee herein is empowered to pay sums it determines to be necessary for Sister Mary Katherine's "care, comfort, support or welfare until her 60th birthday." It is not a question of likelihood or of probability but of what the trustee has the power to do. *McCord, supra,* 836. There is not here present an ascertainable standard within the purview of the statute/regulation. The trustee is empowered to draw upon the net income payable to the charitable organization, for the benefit of the daughter *and* further to draw upon it to the extent necessary for the daughter's "care, comfort, support or welfare."

In addition to the above presently unascertainable standard is provision 3 of paragraph IV, pursuant to which Sister Mary Katherine is empowered, by her last will and testament, to appoint persons (or charities) to whom the remaining corpus and any accumulated income is to be paid, this provision to be effective if Sister Mary Katherine dies before her 60th birthday. Obviously the possibility/probability of the daughter's dying before age 60 is *not* negligible. And the possibility/probability of her appointing a beneficiary other than the Carmelite Order is not possible of measurement.

We believe that we need not belabor the issue further. Based on the cases cited herein, as well as on additional cases cited by counsel in the briefs, the Court concludes that defendant's Motion for Summary Judgment should be granted.

An order, or judgment may be presented, accordingly.